Luis Carlos GONGORA, Jr. a/k/a Luis C. Gongora, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–05–148–CR.

Court of Appeals of Texas, Fort Worth.

Nov. 9, 2006.

Fred Cummings, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Chief, Appellate Divisions, James E. Cook, Kevin Rousseau and Teri Pearce, Asst. Dist. Atty's for Tarrant County Fort Worth, for Appellee.

Panel B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

### OPINION

ANNE GARDNER, Justice.

### I. Introduction

Appellant Luis Carlos Gongora, Jr. appeals his conviction for engaging in organized criminal activity, to wit: murder. A jury found Gongora guilty, and after he pled true to the enhancement allegation, the trial court assessed his punishment at life imprisonment. On appeal, Gongora contends that the trial court erroneously allowed a third-party witness to testify to inculpatory admissions made by a non-testifying accomplice. We affirm.

### II. Factual and Procedural Background

Shortly after midnight on December 27, 2003, Erik Campa, Raul Atayde, and Cristina Sigala left a nightclub in south Fort Worth and drove towards Sigala's home. Along the way, a gray Oldsmobile Alero passed the pickup in which the three were

riding and opened fire on them. Sigala died as a result of a shotgun wound to the head, and neither Campa nor Atayde could identify the occupants of the Alero.

During the course of its investigation, Fort Worth police recovered a twenty-five caliber shell casing from the scene and three twenty-five caliber bullets from the pickup. A short time later, officers received an anonymous tip that ultimately led them to the gray Alero. Police searched the car and recovered another twenty-five caliber shell casing under the driver's seat. Ballistics later confirmed that both the casing recovered at the scene and the casing recovered in the Alero were fired from the same gun. Ericka Cerda, the owner of the Alero, informed the officers that on the night of the shooting she awoke at approximately 1:30 a.m. and discovered that her car was missing. Cerda told police that Gongora, Richard Maldonado, and her boyfriend Isaul Reyna returned the car at approximately 3 a.m. The three men were all members of various Fort Worth area street gangs.

Based on the information provided by Cerda, police obtained and executed a search warrant on Gongora's apartment. Conversations with the occupants of the apartment eventually prompted police to interview another gang member by the name of Tomas Mora. Mora informed police of a detailed conversation he had with Maldonado at Gongora's apartment a day or two after the shootings. During that conversation, Maldonado told Mora that he, Gongora, and Reyna each took part in the shooting. Maldonado went on to say that while Reyna drove Cerda's car, he fired the shotgun and Gongora fired several rounds from a twenty-five caliber handgun at the pickup. Mora also told police that during the course of his conversation with Maldonado, Gongora joined in and admitted to shooting the twenty-five caliber weapon during the shootout.

At trial, the State called Mora to testify regarding the statements made by both Gongora and Maldonado. Gongora's counsel voiced hearsay and confrontation clause objections in an attempt to exclude Mora's testimony regarding Maldonado's statements. However, the trial court overruled these objections and permitted Mora to testify to all of the statements made by both Gongora and Maldonado during their conversation with Mora. Although Gongora did not testify at trial, he was convicted and now appeals.

### III. Confrontation Clause

 Gongora contends that the trial court's admission of the statements Maldonado made to Mora violated his confrontation rights under the Sixth Amendment of the United States Constitution and deprived him of his right to cross-examine Maldonado. Gongora also asserts that Mora's testimony regarding Maldonado's statements constituted inadmissible hearsay that the trial court erroneously admitted under the "statement against interest" exception. Because the central issue on appeal is whether a non-testifying witness's statements were admissible against a criminal defendant, we must first address whether the admission of Maldonado's statements violated Gongora's right to confrontation. *See Wilson v. State*, 151 S.W.3d 694, 697 (Tex.App.-Fort Worth 2004, pet. ref'd). In deciding this constitutional issue, we review the trial court's ruling de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex.Crim.App.2006).

 In all state and federal criminal prosecutions, the accused has the right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him." U.S. CONST. amends.

VI, XIV; *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004); *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, (1965) (applying the Sixth Amendment to the states). Prior to the United States Supreme Court's decision in *Crawford,* Confrontation Clause issues were resolved under *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597(1980). In *Roberts,* the Supreme Court held that the admission of hearsay statements against a criminal defendant at trial does not violate that defendant's rights under the Confrontation Clause so long as those statements possess an adequate "indicia of reliability," meaning generally that the statements either fall under a "firmly rooted hearsay exception" or show "particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. However, *Crawford* drew a distinction between testimonial and non-testimonial statements holding that the Confrontation Clause bars the admission of out-of-court testimonial statements of witnesses who do not testify at trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford,* 541 U.S. at 59, 124 S.Ct. at 1369. In rejecting the *Roberts* standard, the Court explained that "[when] testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: [C]onfrontation." *Id.* at 68–69, 100 S.Ct. 2531, 124 S.Ct. at 1374. Therefore, to implicate the Confrontation Clause, the out-of-court statement at issue must have been (1) made by an absent declarant and (2) testimonial in nature. *See id.* at 68, 124 S.Ct. at 1374; *King v. State,* 189 S.W.3d 347, 358 (Tex.App.-Fort Worth 2006, no pet.).

 Post-*Crawford,* the threshold question in any Confrontation Clause analysis is whether the statements at issue are testimonial or non-testimonial in nature. *Wilson,* 151 S.W.3d at 697; *see Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. Although the *Crawford* Court declined to define "testimonial," it recognized that statements made in the following contexts are indisputably testimonial: ex parte testimony at a preliminary hearing, testimony before a grand jury, testimony at a former trial, and statements derived from police interrogations. *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. We determine whether a statement is "testimonial" under *Crawford* using the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Wall,* 184 S.W.3d at 742.

Maldonado's statements to Mora do not fall within the categories of testimonial evidence described in *Crawford.* None of Maldonado's statements to Mora were made in the context of a police investigation or interrogation, *King,* 189 S.W.3d at 359, nor were they made to a police officer, court official, or under circumstances that would lead an objectively reasonable witness to believe that the statements would be available for use at a later trial. *See Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364. The statements were simply casual remarks spontaneously made by Maldonado while he "hung out" with Mora at Gongora's apartment and can not be regarded as testimonial in nature. *See id.* at 52, 124 S.Ct. at 1364; *Woods v. State,* 152 S.W.3d 105, 114 (Tex.Crim.App.2004), *cert. denied,* 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005). Consequently, we hold that Maldonado's statements to Mora are non-testimonial, and therefore, Gongora's rights under the Confrontation Clause were not implicated. *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374; *Woods,* 152 S.W.3d at 105.

However, Gongora argues that even if we conclude that Maldonado's statements are non-testimonial, we must nevertheless analyze his Sixth Amendment challenge under the former standard set forth in *Ohio v. Roberts* and reverse his conviction because the statements constituted hearsay and did not bear sufficient indicia of reliability. *See Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. However, the *Crawford* Court recognized that not all hearsay implicates the Sixth Amendment's core concerns. *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364. To illustrate, the Court explained:

> An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under [the] hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, ex parte examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.

*Id.,* 541 U.S. 36, 124 S.Ct. at 1364. Although the *Crawford* Court did not expressly overrule the *Roberts* standard as applied in the non-testimonial context, the Court strongly suggested that non-testimonial hearsay falls outside the scope of the Sixth Amendment analysis entirely. *See id.* at 68, 100 S.Ct. 2531, 124 S.Ct. at 1374. The Court noted that "[w]here non[-]testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny all together." *Id.,* 541 U.S. 36, 124 S.Ct. at 1374.

■ Following *Crawford,* this court has questioned the continued viability of the *Roberts* standard as applied to analyses of non-testimonial statements under the Con-

frontation Clause. *See King,* 189 S.W.3d at 361. However, the United States Supreme Court recently clarified the scope of the protections guaranteed under the Confrontation Clause by stating that "[o]nly [testimonial] statements ... cause [a] declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington,* —— U.S. ——, ——, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006). The Court went on to explain that "[i]t is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.* We interpret *Davis* as unequivocally limiting any analysis under the Confrontation Clause to only those statements that are testimonial in nature. *See id.* We agree with our sister court in Amarillo that the *Roberts* standard no longer governs the analysis of a non-testimonial statement under the Confrontation Clause. *See Flores v. State,* 170 S.W.3d 722, 723 (Tex.App.-Amarillo 2005, pet ref'd) (stating that "gone is the test of reliability when the court is faced with a[C]onfrontation [C]lause argument" as to a non-testimonial statement), *cert. denied,* —— U.S. ——, 127 S.Ct. 141, 166 L.Ed.2d 103, 2006 WL 1647113 (2006).

Moreover, we believe our position to be in line with the court of criminal appeals' approach on this issue. In *Woods v. State,* the court faced the issue of whether allowing a third-party witness to testify to inculpatory admissions made by a non-testifying accomplice violated the defendant's rights under the Confrontation Clause. *Woods,* 152 S.W.3d at 112. In accordance with *Crawford,* the court evaluated the accomplice's admissions and found them to be non-testimonial. *Id.* at 114. Therefore, the court held that the new rule articulated in *Crawford* did not apply, and the defendant's rights under the Confrontation Clause were not violated. *See id.* Al-

though, the court did analyze the trustworthiness of the hearsay statements under the rules of evidence to determine whether the trial court erred in admitting the statements as a "statement against interest," the court dispensed entirely with any further Confrontation analysis under *Roberts* once the statements were found to be non-testimonial. *See id.* at 112–14. Therefore, we hold that Maldonado's non-testimonial statements fall outside the scope of the Sixth Amendment and are not subject to Confrontation Clause scrutiny under *Roberts. See Davis,* 126 S.Ct. at 2273. Rather, we look to the applicable hearsay rules in reviewing the trial court's admission of these statements. *See Woods,* 152 S.W.3d at 112–14.

## IV. Statements Against Interest

Gongora also challenges the trial court's admission of Mora's testimony regarding Maldonado's out of court statements under the hearsay rules. Specifically, Gongora contends that the court erred in admitting the hearsay statements under the "statement against interest" exception because there were insufficient corroborating circumstances to clearly indicate the statements were trustworthy. We review a trial court's ruling to admit or exclude evidence under an abuse of discretion standard. *Martin v. State,* 173 S.W.3d 463, 467 (Tex.Crim.App.2005) (quoting *Sauceda v. State,* 129 S.W.3d 116, 120 (Tex.Crim. App.2004)). We will not reverse a trial court as long as its ruling was within the "zone of reasonable disagreement." *Couchman v. State,* 3 S.W.3d 155, 158 (Tex.App.-Fort Worth 1999, pet. ref'd). Moreover, if the trial court's ruling on the admission of evidence is correct under any theory of law, even if the trial court gives the wrong reason for its ruling, we must affirm the court's decision to admit the evidence. *Id.*

In order for a declaration against penal interest to be admissible under the Texas Rules of Evidence, the statement must be self-inculpatory with corroborating circumstances that clearly indicate the trustworthiness of the statement. Tex.R. Evid. 803(24). A statement which is self-inculpatory can be admissible against a defendant who was not the declarant of the statement. *Dewberry v. State,* 4 S.W.3d 735, 751 (Tex.Crim.App.1999), *cert. denied* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). On review, Gongora does not contend that Maldonado's statements were not sufficiently self-inculpatory. Rather, he simply asserts that the statements were inadmissible under the rules of evidence because insufficient corroborating circumstances existed to indicate that Maldonado's statements were clearly trustworthy.

In assessing the trustworthiness of a statement against interest under the rules of evidence, a trial court should consider a number of factors: (1) whether guilt of the declarant is inconsistent with guilt of the defendant, (2) whether the declarant was so situated that he might have committed the crime, (3) the timing of the declaration, (4) the spontaneity of the declaration, (5) the relationship between the declarant and the party to whom the statement is made, and (6) the existence of independent corroborative facts. *See Bingham v. State,* 987 S.W.2d 54, 58 (Tex.Crim.App.1999); *Davis v. State,* 872 S.W.2d 743, 749 (Tex.Crim.App.1994). The first two factors only apply when the defendant is the proponent of a statement against interest made by another that tends to exculpate the defendant at trial. *Woods,* 152 S.W.3d at 113. However, when the State offers the statement to inculpate the defendant, as in this case, the first two factors are inapplicable. *Id.*

As to the timing of the statement, Maldonado made the statements at issue to

Mora a day or two after the offense and before police had developed any leads or questioned any suspects in the case. Moreover, Maldonado made the statements spontaneously in the course of simple conversation while he and Mora "hung out" at Gongora's apartment. There is no evidence in the record to suggest that Mora either took part in the shooting or initiated the conversation that led to Maldonado's admissions. Rather, Maldonado made the statements to Mora, an acquaintance, at a time when he had no motive to shift blame onto Gongora or minimize his own involvement in the shooting. *See id.*

Additionally, there were multiple independent corroborating circumstances indicating the trustworthiness of Maldonado's statements. First, Mora testified that Maldonado stated that on the night of the shooting, he "got into it with some people" that were driving along beside him in a pickup truck. Mora stated that Maldonado explained that he, Gongora, and Reyna were riding in Cerda's car when the altercation arose and that he then fired one shot from a shotgun at the pickup. Cerda testified at trial that Maldonado had access to a shotgun and that he had shotgun shells in his possession the night before the shooting. Cerda also testified that on the night of the shooting she noticed that her gray Oldsmobile Alero was missing and that her boyfriend, along with Gongora and Maldonado, returned the car at approximately 3 a.m. The record also indicates that the victim in this case died as a result of a shotgun wound to the head and that Campa informed police that the shooters fled the scene in a gray Alero. Mora also testified that Gongora admitted to him that he took part in the shooting by firing a twenty-five caliber handgun at "two dudes" and a girl while on Hemphill street. Other evidence presented at trial indicated that the shooting did, in fact, occur on Hemphill street and that, at the time of the shooting, there were two males and one female riding in the pickup. During the investigation, police were able to determine that the twenty-five caliber shell casing found at the scene of the shooting was fired from the same weapon that shot the other twenty-five caliber shell casing later found in Cerda's car. Therefore, in light of the evidence in the record, we hold that the trial court did not abuse its discretion in admitting Mora's testimony under rule of evidence 803(24) because there were sufficient corroborating circumstances to allow the court to reasonably determine that Maldonado's statements were trustworthy.

## V. *Bruton v. United States*

Gongora also asserts that the admission of Mora's testimony at trial deprived him of his Sixth Amendment right to cross-examine the witnesses against him citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* involved the joint trial of co-defendants where a non-testifying defendant's statement that incriminated the other defendant was introduced into evidence. *Id.* at 124–25, 88 S.Ct. at 1621–22. The non-testifying co-defendant's Fifth Amendment rights prevented the other defendant from cross-examining him regarding the incriminating statement, calling him as a witness, or commenting on his failure to testify. *Id.* at 124, 88 S.Ct. at 1621. Under the *Bruton* holding, a defendant's Sixth Amendment confrontation and cross-examination rights are violated if, at a joint trial, a non-testifying co-defendant's facially incriminating out-of-court statement is admitted against the other defendant. *Id.* at 135–36, 88 S.Ct. at 1627–28. However, in this case, Gongora and Maldonado are not co-defendants. Gongora was tried separately for the offense at issue, thereby rendering the concerns underlying *Bruton*

inapplicable in this case. *See id.*, 88 S.Ct. at 1627–28.

## VI. Conclusion

Therefore, we hold that the admission of Mora's testimony regarding Maldonado's statements did not violate Gongora's Sixth Amendment rights. Further, we hold that the trial court did not abuse its discretion in admitting those statements under the "statement against interest" exception to the hearsay rule and we affirm the trial court's judgment.