



## MEMORANDUM OPINION

No. 04-07-00146-CR

Arturo **MATA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-4565-A
Honorable Teresa Herr, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Catherine Stone, Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  July 9, 2008

AFFIRMED

A jury found defendant, Arturo Mata, guilty of murder, and assessed punishment at fifty

years' confinement and a $10,000 fine.  On appeal, defendant contends: (1) the evidence is legally

and factually insufficient to support his conviction; (2) the court erred when it allowed into evidence

a witness's identification of defendant that was the product of an overly suggestive identification

process; (3) prosecutors injected themselves as fact witnesses while questioning witnesses; (4)

autopsy photographs admitted into evidence were unfairly prejudicial; (5) the court erred when it

allowed into evidence the statement of a minor questioned by police; (6) the court improperly admitted out-of-court statements into evidence in violation of the Confrontation Clause of the Sixth Amendment; and (7) an improper jury charge amounted to a comment on the evidence. In an opinion and judgment dated May 14, 2008, we affirmed the trial court's judgment. We withdraw our opinion and judgment of May 14, 2008 and issue this opinion and judgment in its place. We affirm.

## BACKGROUND

Beatrice Diaz was mortally wounded in front of her home during a drive-by shooting in San Antonio, Texas, on March 3, 2005. The State alleged defendant drove the truck from which his brother, Israel Mata, fired multiple shots at the house where Beatrice Diaz and her cousin, Hector Reyes, were playing basketball. Diaz died in the hospital days later.

Reyes, the likely target, was not injured. When police arrived at the scene of the shooting, Reyes told police about a confrontation he initiated earlier in the day that he suspected led to the shooting. Reyes and his fellow gang-members in a gang known as EBS had been harassing and fighting rivals in the neighborhood. Two weeks prior to the shooting, Reyes had a physical altercation with Joey Delfin. Delfin is the Matas' nephew. Also, earlier on the afternoon of the shooting, Reyes and his friends had chased Delfin, his cousin David Machuca, and two other boys into a corner store.

Testimony revealed Machuca used the store's telephone to call his uncles, the Mata brothers, who the State alleged belonged to a gang known as LC Mob. Reyes and his friends left the corner store, and Israel and defendant picked up Machuca, Delfin, and the others at the store. Javier Tovar, one of the boys with Machuca and Delfin, testified Israel drove them to an apartment on Avondale,

left them there, then returned shortly afterward with a bag Tovar believed contained bullets. Tovar testified Israel and defendant left again and returned an hour later.

At the crime scene, Reyes told police the assailants attacked from a hunter green 1996 or 1997 Chevrolet truck. He told police he saw the driver in the cab and a shooter in the bed of the truck, who concealed his face with the black bandana emblematic of the LC Mob while firing his pistol toward Reyes and Diaz. Reyes said he ran around the side of the house while Diaz attempted to run inside. Reyes could not identify the people in the truck because, as he said, he was too busy trying to avoid the gunfire.

Two witnesses nearby who heard gunfire identified defendant as the driver of the truck. Jose Vasquez was having his tow truck repaired at a nearby shop when he heard gunshots and walked toward the street to see a green Chevrolet truck speeding away from the scene and someone in the back wearing a black bandana over his face. He told police the truck's front license plate was missing and something was hanging from the rearview mirror, details which matched the truck that police would later connect to defendant. Vasquez identified defendant from a photo array five days after the shooting, and again at trial. Another witness, Yvonne Rodriguez, heard the gunshots and walked toward the back door of her kitchen to see the truck driving in the alley behind her home. She testified she saw a driver, but did not see anyone in the back of the truck. Police never showed her photographs by which to identify the driver, but she later identified defendant in photographs shown to her by the district attorney's investigator. She also identified defendant at trial.

At the scene, Reyes told police he suspected Machuca's involvement and told police Machuca lived somewhere on Berkshire. A police officer went to Berkshire and asked a resident if any "troublemakers" lived on the street. The resident pointed to 221 Berskhire. The officer did

not find the suspect green truck, but ran the license plates of another vehicle parked in front of the house. The officer learned the vehicle was associated with Israel through a speeding ticket. Also, it was registered to Monica Baca at nearby 111 Maurine. At the Maurine address, officers discovered the green Chevrolet truck hidden beneath a tarp, blankets, and a trampoline. The hood was warm, indicating the truck was driven very recently. Police spotted a shell casing in the bed of the truck, which technicians later matched to eight more casings found in the street in front of the house where the shooting occurred. Vanessa Baca, approximately twelve years old, told police in a recorded statement that defendant had been working at her house at 111 Maurine earlier that day and that her mother, Monica, had given defendant the keys to the truck. Vanessa told police defendant had asked for a tarp and blankets to cover the truck, and that she had helped him retrieve the items, which defendant used to cover the truck. Police discovered defendant's palm print on the driver's side door and Israel's fingerprints on the top edge of the truck bed.

Another witness, Michael Reyes, knew the Mata brothers through a friend. He testified he arrived at the Avondale apartment on the day of the shooting to find Machuca and his companions there. While he was there, he said the Mata brothers and their nephew, Gabriel Leal, arrived looking worried or upset. After ordering everyone to leave, the Mata brothers and Leal left together in a green truck. Later in the evening, Michael drove the Mata brothers and Leal to Port Aransas. He testified he knew he was helping them to escape from authorities. He said Israel spoke of having shot a girl in the head, and that defendant talked of having wiped down and concealing the truck.

## LEGAL AND FACTUAL SUFFICIENCY

In his first issue, defendant contends the evidence against him is legally insufficient because the State failed to establish that he was present at or involved in the drive-by shooting. In his second

issue, defendant contends the evidence is factually insufficient to support a finding that he intentionally or knowingly participated in the drive-by shooting. We review the legal and factual sufficiency of the evidence under the well-established standards of review. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). The jury, as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony; therefore, reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). A jury is permitted to make reasonable inferences from the evidence. *Id.* at 254-55.

According to the indictment, defendant "did intentionally and knowingly cause the death of an individual, namely Beatrice Diaz, by shooting Beatrice Diaz with a deadly weapon, namely a firearm." In addition, defendant, "with intent to cause serious bodily injury to an individual . . . did commit an act clearly dangerous to human life that caused the death of Beatrice Diaz by shooting at and in the direction of Beatrice Diaz with a deadly weapon, namely a firearm." The State did not allege defendant pulled the trigger but, instead, that he drove the truck while his brother fired the handgun from the truck's cargo bed. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE Ann. § 7.01(a) (Vernon 2003). A person is criminally responsible for the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.*

Two eyewitnesses identified defendant as the driver of the green truck in the minutes after the shooting. One of those witnesses, Jose Vasquez, also described details of the truck, including the item dangling from the rearview mirror and the missing front license plate. Vasquez also testified he saw a man wearing a black bandana in the back of the truck, matching the account given by Hector Reyes at the crime scene. The truck was connected to the crime scene by eyewitness accounts and physical evidence, including the match of a spent shell casing in the bed of the truck to those found in the street at the crime scene. Vanessa Baca testified defendant had the keys to the truck, and had asked her to help him conceal the truck with a tarp and blankets. Defendant's fingerprints were found on the driver's side door of the truck. Michael Reyes testified he heard defendant tell his brother Israel that he had wiped the truck down and concealed it. He testified Israel expressed concern over having shot a girl in the head. Reyes also testified he knew he was helping the Matas escape.

At trial, defendant cross-examined the witnesses and offered evidence contrary to the verdict. However, it was for the jury to determine the credibility of the witnesses and the weight to give to their testimony and the evidence adduced. We conclude the evidence was legally and factually sufficient to sustain the conviction.

## IDENTIFICATION PROCEDURE

In his third issue, defendant complains the trial court erred when it admitted a witness's statements identifying defendant that were the result of an impermissibly suggestive photo array. Defendant contends the array was so suggestive as to give rise to the very substantial likelihood of mistaken identity in violation of his due process rights.

A pretrial identification procedure may be so unnecessarily suggestive and conducive to mistaken identification that to use the identification at trial would deny the accused due process of law. *See Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988). When determining the admissibility of an out-of-court identification that is challenged by a defendant, we engage in a two-step analysis. *Barley v. State*, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995); *Mayfield v. State*, 152 S.W.3d 829, 831 (Tex. App.—Texarkana 2005, pet. ref'd). First, we consider whether the defendant has presented evidence that the pretrial identification procedure was impermissibly suggestive. *Barley*, 906 S.W.2d at 33; *Mayfield*, 152 S.W.3d at 831. Second, if the procedure was impermissibly suggestive, we next determine whether the procedure gives rise to a very substantial likelihood of irreparable misidentification. *Barley*, 906 S.W.2d at 33; *Mayfield*, 152 S.W.3d at 831.

Javier Tovar was with the Matas' nephews, David Machuca and Joey Delfin, when Israel Mata picked them up from the corner store on the day of the murder. He testified he was dropped off with the others at the apartment on Avondale. During questioning at the police station five months after the murder, Tovar identified Israel Mata and defendant from separate photo arrays. In the identification of defendant, police showed Tovar a photo array featuring six similar photos in two rows of three. From the array, Tovar identified defendant as a person he had seen arrive at the apartment and then leave with Israel.

Defendant's photo, situated at the top right, is slightly larger than four others, but smaller than the photo directly beneath it. The backgrounds of the other photos are light blue, while defendant's background is gray. Such slight discrepancies, however, do not amount to an impermissibly suggestive identification process. *See Barley*, 906 S.W.2d at 33. Additionally, the officer who conducted the interview and identification procedure with Tovar testified he did not

suggest a particular photo, nor did he suggest police had anyone pictured in the array in custody. *See Barley*, 906 S.W.2d at 33.

Here, there is no evidence the detectives made any suggestive statements to Tovar that would have caused him to select defendant, or that the officers conducted the identification procedure in a suggestive manner. We conclude the out-of-court identification procedures were not impermissibly suggestive; therefore, we do not consider whether the procedures created a substantial likelihood of misidentification that would deny defendant his right to due process.

## AUTOPSY PHOTOGRAPHS

In his sixth issue, defendant complains the trial court erred when it admitted autopsy photographs of the murder victim because he offered to stipulate to the cause of death and because the photographs were more prejudicial than probative.

The admissibility of a photograph is within the sound discretion of the trial judge. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). Photographs provide powerful visual evidence of the offense and the trial court does not abuse its discretion by admitting photographs of the victim into evidence merely because they are gruesome. *See Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); *Vasquez v. State*, 2 S.W.3d 355, 360 (Tex. App.—San Antonio 1999, pet. ref'd). Although autopsy photographs are gruesome, they depict the reality of the brutal crime committed. *See Paredes*, 129 S.W.3d at 540.

The State offered the autopsy photographs as an aid to the medical examiner's testimony regarding the "mechanism of injury." Defendant offered to stipulate to the cause of death, but over his objection, the court admitted six color photographs of Diaz's body taken during the autopsy. The Court of Criminal Appeals has determined an offer to stipulate to the cause of death does not

preclude the admission of the photographs, nor does it render them less probative. *See Marshall v. State*, 210 S.W.3d 618, 629-30 (Tex. Crim. App. 2006) (holding admissible autopsy photographs over defendant's offer to stipulate to means of death as point-blank, penetrating gunshot wound to victim's head); *Newbury v. State,* 135 S.W.3d 22, 41-44 (Tex. Crim. App. 2004) (holding admissible autopsy photographs over defendant's offer to stipulate to homicide and gunshot wounds as manner and means of death); *Jones v. State*, 843 S.W.2d 487, 500 (Tex. Crim. App. 1992), *partially abrogated on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001) (holding admissible six photographs of charred remains of victim at scene and at medical examiner's office, including close-up depiction of seventeen stab-wounds to neck, despite offer to stipulate to cause and manner of death).

We next consider whether the autopsy photographs should have been excluded under Texas Rule of Evidence 403 on the grounds that their probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In assessing the prejudicial effect of photographs, courts may consider the number of photographs offered; their gruesomeness, detail, and size; whether they are in color; whether they are taken close-up; whether the person in the photograph is clothed; and any other factors unique to the situation. *Id*.; *Long v. State*, 823 S.W.2d 259, 270 (Tex. Crim. App. 1991). Photographs generally are admissible if verbal testimony about the matters depicted in the photograph is also admissible. *See Paredes*, 129 S.W.3d at 539; *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). This is because visual evidence

accompanying testimony is persuasive and gives the fact finder a means by which to understand the witness's conclusions. *Id.*

Defendant complains the probative value of the six color photographs was diminished, and the prejudicial effect heightened, because the photos depict damage to Diaz's body that was caused during the autopsy. "The main concern [is] that the jury might attribute certain injuries caused by the autopsy to the appellant, which would be unfairly prejudicial to the appellant's case." *Salazar v. State*, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001). However, where the medical examiner explains the content of the photographs, there is no danger that the jury will mistakenly attribute the work of a surgeon or medical examiner to the defendant. *See id.*; *Hobday v. State*, No. 04-05-00812-CR, 2007 WL 56273, at *2 (Tex. App.—San Antonio Jan. 10, 2007, pet. dism'd) (mem. op., not designated for publication). Here, Bexar County Medical Examiner Jean Rulon, M.D., explained the contents of each photograph as it was projected onto a screen for the jury's view. The photos depict mutilation to the body other than that caused by the gunshot wound, which defendant contends should have precluded their admission. However, Dr. Rulon distinguished for the jury the damage caused by the fatal gunshot from the marks that indicated life-saving attempts and the autopsy itself; thus, here was no risk of confusion.

Defendant also contends the photos were prejudicial due to the age of the victim. However, in *Gallo v. State*, the Court of Criminal Appeals concluded a trial court did not err in admitting twenty-three color autopsy photographs of a three-year-old murder victim. *Gallo v. State*, 239 S.W.3d 757, 763-64 (Tex. Crim. App. 2007). Also, in *Prible v. State*, the Court held admissible photos of the burned bodies of three girls: two seven-year-olds and a twenty-two-month-old. *Prible*

*v. State*, 174 S.W.3d 724, 727 (Tex. Crim. App. 2005). Here, the victim was thirteen years old. We cannot conclude her age alone rendered the photos prejudicial.

Based on the foregoing, we conclude the trial court did not abuse its discretion in admitting the photographs.

## TESTIMONIAL STATEMENT

In his tenth issue, defendant complains the court erred when it admitted the testimony of Michael Reyes regarding statements made to him by Israel Mata. Defendant complains Israel's statements implicating defendant were testimonial in nature and, therefore, admitting the statements into evidence violated his Sixth Amendment right to confront the witnesses against him and to cross-examine him.

Reyes testified that he drove Israel, defendant, and the Matas' half-brother, Gabriel Leal, to Port Aransas in the hours following the murder. When the State asked Reyes to tell the jury what Israel said, defendant objected on the basis that Israel's statements introduced by Reyes would violate defendant's right to confront the witness (Israel) against him. The trial court overruled the objection, and Reyes testified he overheard Israel say he had shot a girl in the head. Reyes then testified to defendant's statements in the conversation, including defendant's statements regarding concealing the truck and wiping it for fingerprint evidence. Defendant offered no objection to the admission of his own statements to Reyes.

"Testimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). To illustrate its reasoning, the *Crawford* Court offered examples of testimonial statements: *ex parte* testimony at a preliminary hearing, testimony

before a grand jury, testimony at a former trial, and statements derived from police interrogations. *Id*. at 68. Statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" could be considered testimonial. *Id*. at 52. By contrast, the Court reasoned, a casual remark to an acquaintance does not constitute a testimonial statement implicating Sixth Amendment concerns. *Id*. at 52; *Woods v. State*, 152 S.W.3d 105, 114 (Tex. Crim. App. 2004). We review the question of whether a statement is testimonial or non-testimonial *de novo*. *Wall v. State*, 184 S.W.3d 730, 734 (Tex. Crim. App. 2006).

Nothing about Israel's statements to the other passengers resembles testimony as described in *Crawford*. Israel's comment to his brother or others in the car that he had shot a girl in the head was not "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52. Israel's and defendant's conversation much more closely resembled "casual remarks to an acquaintance" than a "formal statement to government officers." *Id*. at 58; *Gongora v. State*, 214 S.W.3d 58, 62 (Tex. App.—Fort Worth 2006, pet ref'd). Because Israel's statement was not testimonial in nature, the trial court did not err in overruling defendant's objection to Reyes' testimony.

## VANESSA BACA'S TESTIMONY

On appeal, defendant raises several complaints about the testimony of Vanessa Baca. In his fourth issue, defendant asserts the prosecutor injected himself as a witness when examining twelve-year-old Vanessa Baca.[1] In his seventh issue, defendant asserts the court erred when it allowed the State to call Vanessa as a State's witness because the State called her solely to introduce her prior

---

[1] In his fifth issue, defendant also complains the prosecutor injected herself as a witness when examining Javier Tovar. Because defendant offered no objection during the State's examination of Tovar, this issue was not preserved for our review. *See* TEX. R. APP. P. 33.1(a).

recorded statement to the police "under the subterfuge of impeachment when the statement was not a prior inconsistent statement" and Vanessa's prior statement was not properly introduced as a prior inconsistent statement. In his eighth issue, defendant contends Vanessa's recorded statement should not have been admitted because she was a minor when she gave her recorded statement and her statement was obtained in violation of the Texas Family Code. *See* TEX. FAM. CODE § 52.02(b) (Vernon 2002). Finally, in his ninth issue, defendant contends the court erred when it failed to instruct the jury on the inadmissibility of Vanessa's allegedly illegally obtained statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

At trial, defendant raised only two objections to the State's examination of Vanessa. First, each time Vanessa responded that she did not remember, the prosecutor referred to her prior recorded statement. Finally, the following occurred:

> Q. [Defendant] was looking for blankets to cover the truck. I got him blankets. Did you say that back on March 3rd?
> A. I don't remember.
> Q. You don't remember. I got him blankets. [Defendant] told me not to go outside. He told us to go inside. Someone called my sister to stay inside. And Monica, my sister, told us to stay inside. And you were there with a bunch of young kids. You were there with Monica - -

Defense counsel: Objection to the testimony and ask it be phrased as a question.

Prosecutor: I'll withdraw and I'll try to clarify.

> Q. Do you remember saying all that to the police officer?
> A. No.

Although defendant objected to the prosecutor's "testimony," the trial court did not rule on the objection because the State immediately acceded to the defendant's request that the prosecutor rephrase the questions. *See* TEX. R. APP. P. 33.1(a)(2) (objection is preserved when complaint is made to the court and the court rules or refuses to rule on the objection and complaining party

objects to refusal). Accordingly, no error is shown on this record; therefore, defendant's fourth issue is overruled.

The second objection arose when the prosecutor attempted to admit Vanessa's prior recorded statement, which was contained on a CD, into evidence. Defense counsel objected as follows:

> With all the "I don't remembers," the proper course of action, if it were a written document, would be to present it to her and say, Does it refresh your memory? Because it's not and it's not admitted into evidence. The only way it can be used to refresh the witness's memory is to play it to the witness out of the presence of the jury. If she was denying it, it might be admissible.

In his seventh issue on appeal, defendant complains the State improperly called Vanessa solely to introduce her prior statement to the police "under the subterfuge of impeachment when the statement was not a prior inconsistent statement," and that Vanessa's prior recorded statement was not properly introduced as a prior inconsistent statement.

A party may impeach a witness with her prior inconsistent statement if the party first presents the witness with the existence of the statement; describes the details and circumstances surrounding the statement; and gives the witness the opportunity to explain or deny the statement. TEX. R. EVID. 613(a). If the admission is partial, qualified, or otherwise equivocal, or if the witness disclaims any memory of making the statement, the prior statement is admissible for impeachment. *McGary v. State*, 750 S.W.2d 782, 786 & n.3 (Tex. Crim. App. 1988); *Ruth v. State*, 167 S.W.3d 560, 566 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

At trial, when the State asked Vanessa questions regarding statements she gave to the police, she repeatedly responded "I don't remember." The State showed her the CD and reminded her that her statement had been recorded, who interviewed her, and what she told the police on the recording.

She admitted that her previous statement was contained on the CD, but she disclaimed memory of her statement. The trial court examined a transcript of the CD and ordered the CD played for the jury. The court explained: "It is being offered into evidence or – technically not, *because it's for impeachment purposes . . . .*" On this record we cannot conclude the trial court abused its discretion in admitting the CD for impeachment purposes. Accordingly, defendant's seventh issue is overruled.

As to defendant's eighth issue regarding Vanessa's recorded statement allegedly having been obtained in violation of the Texas Family Code, this complaint was not raised before the trial court; therefore, it is not preserved for our review. *See* TEX. R. APP. P. 33.1(a). In defendant's ninth issue, based on his complaint that Vanessa's statement was obtained in violation of the Family Code, he asserts the court erred when it failed to instruct the jury on the inadmissibility of Vanessa's allegedly illegally obtained statement. *See* TEX. CODE CRIM. PROC. Ann. art. 38.23 (Vernon 2005). Article 38.23 provides that "[i]n any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained." *Id.* Family Code section 52.02(b) requires any "person taking a child into custody [to] promptly give notice of the person's action and a statement of the reason for taking the child into custody, to: (1) the child's parent, guardian, or custodian; and (2) the office or official designated by the juvenile board." TEX. FAM. CODE. ANN. § 52.02(b). Defendant contends he was entitled to an article 38.23 instruction because the notice required under the Family Code was never given. However, a defendant is entitled to a jury instruction under article 38.23 only if the trial evidence creates a factual dispute about how the evidence was obtained, *i.e.*, whether it was obtained illegally. *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004); *Bell v. State,* 938 S.W.2d 35, 48 (Tex.

Crim. App. 1996). Here, no evidence was adduced at trial on whether the State notified Vanessa's mother or the juvenile board; thus, the issue of whether her statement was illegally obtained was never raised. Accordingly, on appeal, defendant has not shown he was entitled to an article 38.23 instruction.

## JURY CHARGE

In his eleventh and final issue, defendant complains the court erred by allowing an improper jury charge on impeachment evidence regarding Vanessa's testimony. Specifically, defendant complains the following language in the charge constituted an improper comment on the evidence: "Therefore, you are instructed that the testimony of the witness Vanessa Baca regarding her inconsistent statements, if any, was admitted for the purpose of impeaching Vanessa Baca, if you find that it does impeach her, and you cannot consider said impeachment testimony as any evidence whatever of the guilt of the defendant." Defendant contends the charge describes Vanessa's statements as "'testimony' when said statements were not testimony. Therefore, the charge was a comment on the evidence and assumed facts not in evidence." As already noted, defendant has argued the State called Vanessa "under the subterfuge of impeachment." When the trial court admitted Vanessa's prior recorded statement into evidence, the court acknowledged the statement was for impeachment purposes. "When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly . . . ." *See* TEX. R. EVID. 105(a). Therefore, although defendant did not request the instruction, we conclude the trial court did not err in including a limiting instruction in the jury charge.

**CONCLUSION**

We overrule defendant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice



Do not publish