**AFFIRM; and Opinion Filed July 16, 2013.**



# In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00211-CR

### CHRISTEN MITCHELL, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 291st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F10-61101-U

## OPINION

Before Justices Lang-Miers and Fillmore[1]
Opinion by Justice Fillmore

Appellant Christen Mitchell was convicted by a jury of aggravated sexual assault of a child younger than six years of age, *see* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West Supp. 2012), and sentenced to twenty-five years' imprisonment. *See id*. § 22.021(f)(1). In five points of error, Mitchell contends (1) the evidence is legally insufficient to prove penetration of the child's female sexual organ, (2) a material variance between the pleading and proof of the statutory elements rendered the evidence legally insufficient, (3) an instant message transcript was admitted in evidence in violation of Mitchell's rights under the Confrontation Clause of the

---

[1] Justice Mary Murphy was on the panel and participated at the submission of this case but, due to her retirement from this Court on June 7, 2013, did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

Sixth Amendment of the United States Constitution, (4) the trial court erred by admitting hearsay evidence as contained in the complainant's medical records, and (5) the trial court erred by instructing the jury it had to unanimously agree Mitchell did not digitally penetrate the complainant's sexual organ before considering whether the State proved the lesser offense of indecency with a child by sexual contact. We affirm the trial court's judgment.

**Background**

In August 2010, Mitchell lived in an apartment with her two-year old daughter, A.M., and with a roommate, Brittany Kallon. Kallon testified that Mitchell borrowed her laptop computer which had a built-in camera. Utilizing Kallon's computer, on August 26, 2010, Mitchell communicated by computer with an individual identified as Justin Spears (the computer communication). Thereafter, Kallon found a transcript of the communication on her computer. Kallon confronted Mitchell about the transcript, but Mitchell said she did not "do anything" and she was "just typing words." Kallon was not satisfied with the explanation Mitchell gave her about the computer communication. Kallon contacted the police and Child Protective Services (CPS). Kallon allowed the police to take and search her computer.

FBI forensic examiner Donald F. Wills testified regarding his analysis of evidence he received from Detective Rivera of the Dallas Police Department. Willis made a report regarding his analysis of Kallon's computer and the information he obtained from the Skype folder of that computer containing the transcript of the computer communication between Mitchell and Spears. Wills explained that individuals with "Skype" accounts may contact and communicate with one another through computers. If one's computer is equipped with a camera, the individual operating the computer can project her image on the computer of the individual with whom she is engaged in a Skype communication. The text of the August 26, 2010 Skype computer communication between Mitchell and Spears indicated Mitchell had participated in a sexual

assault of her daughter, A.M. No information was found enabling identification of the individual who used the name "Spears" during the Skype computer communication.

Wills testified that at the beginning of the computer communication, it appeared Mitchell had the camera activated on the laptop computer she was utilizing and Spears was viewing what Mitchell was doing on camera. It appeared from the transcript of the computer communication that Spears attempted to have Mitchell communicate audibly as one would over a video conference, but later in the computer communication, Mitchell typed text messages to Spears. Wills read from the transcript of the computer communication, and the transcript of the computer communication was also introduced into evidence. Wills testified that Spears indicated certain amounts of money would be paid to Mitchell for things Mitchell did on camera, such as removing her bra and showing her breasts, indicating the "more you do is more I'll pay." In the messaging exchange, Spears asked Mitchell if she had any children, and she indicated she had a two-year-old daughter. Mitchell then had her daughter, A.M., perform acts as instructed by Spears, such as having A.M. pretend to breast feed. Spears instructed Mitchell to have A.M. suck on her breasts to show A.M. how to breast feed. He also requested to see Mitchell and A.M. naked. Spears instructed Mitchell to rub A.M.'s "butt hole" and "pussy hole." Spears instructed Mitchell to lick her finger, and Spears communicated to Mitchell that "obviously" Mitchell could not get her finger deep, but instructed Mitchell to show him how deep Mitchell could insert her finger. Spears communicated, "A tiny bit," and "Deeper is more $$." Spears again instructed Mitchell to lick her finger, get it wet, and "now do it." Mitchell responded, "Ok." Spears then instructed, "Do it. In pussy. Have [A.M.] rub your pussy now." Mitchell responded, "Ok." When Spears instructed Mitchell to have A.M. put her fist in Mitchell's vagina, Mitchell communicated to Spears that A.M. pulled her hand back and would not do that. Despite continued urging from Spears, Mitchell communicated A.M. was two years old and

didn't "grasp the concept." Mitchell wrote, "I tried. She's not going to." Later in the instant text messaging, Spears instructed Mitchell to have A.M. lick Mitchell's vagina. Spears indicated A.M.'s head was in the way of Spears viewing what A.M. was doing. Mitchell then asked whether Spears saw, and Spears responded affirmatively.

Wills also examined emails from a cellular phone, including August 28, 2010 and August 29, 2010 exchanges between Kallon and Mitchell regarding Kallon confronting Mitchell about the computer communication between Mitchell and Spears that Kallon found on her computer. In those phone messages, Mitchell wrote she did not have any remorse, because she did not do anything to A.M. Mitchell wrote to Kallon that she was sorry she "did that" on Kallon's computer, and she did not think "writing" or "portraying that a child was with me" could get her in trouble. Mitchell also wrote to Kallon that she understood how it appeared from reading the transcript of the computer communication with Spears.

Kara Miller, an investigator for CPS, testified she investigated abuse and neglect of children. After CPS employee Casey Arnold conducted her initial investigation regarding this matter and took A.M. into the custody of CPS, Miller conducted further investigation. Miller reviewed the transcript of the computer communication between Mitchell and Spears. Miller then spoke to Mitchell on September 15, 2010. In that interview, Mitchell acknowledged to Miller that she communicated with Spears through a Skype communication on a computer, and that Spears told her she would receive money in connection with the communication. At first, they chatted and Spears asked to see Mitchell's body and what size bra she wore. She took off her clothes and showed Spears her figure. Spears then asked if she had any children and Mitchell told Spears she did. Spears communicated Mitchell would receive money if she "did things" with her child. Mitchell told Miller she made A.M. bite her on her breast, she rubbed A.M.'s vagina with her hand, Mitchell had A.M. rub her vagina, and Mitchell put A.M.'s head

–4–

down near Mitchell's vagina. Mitchell told Miller that she and A.M. were naked. Mitchell said she was not able to see Spears during the Skype instant messaging communication.

Detective Rivera testified at trial. Rivera went to Mitchell's apartment in response to a sexual abuse complaint. Rivera was told a two-year-old child had potentially been sexually abused by her mother. Rivera had reason to believe Kallon's computer was involved in the sexual abuse, and Kallon gave consent to have her laptop computer searched. Rivera left the apartment to obtain a search warrant and returned to the apartment later that evening. At that time, he met with Mitchell and asked Mitchell to come to police headquarters. Rivera did not interview A.M., because she was nonverbal due to her age. A.M. was taken into custody by CPS. Mitchell went voluntarily to the police station.

A videotape of Mitchell's police station interview by Rivera was played for the jury. In that video, Mitchell spoke with Rivera about using Kallon's computer to conduct her Skype communication with Spears. Mitchell explained that Spears was not on camera during the computer communication and, instead, only typed his communications. According to Mitchell, A.M. "ain't never had sex like penetrate," "she ain't never been penetrated." Mitchell told Rivera, ""I just, I didn't finger her or nothing. I put my hand by her thing." On the police videotape, Mitchell demonstrated what she was describing and said, "It may have looked, but I didn't finger her." While Mitchell stated, "[a]in't nothing been inserted inside," she specifically told Rivera that, referring to the "lips" of A.M.'s vagina, Mitchell "wasn't deep in there." Mitchell told Rivera her "fingers were on her lips." She demonstrated moving her hand back and forth "up past A.M.'s pee pee hole." Mitchell stated her hand was "down there between [A.M.'s] pee hole" and vagina. She also told Rivera that A.M.'s face was "down there," referring to Mitchell's vagina. Mitchell told Rivera that A.M. bit her breast.

At trial, Mitchell testified that on August 26, 2010, she was living with her daughter, A.M., and her roommate, Kallon. On August 26, 2010, Mitchell participated in a Skype computer communication with an individual identified as Spears. A camera was embedded at the top of the computer Mitchell was using and was activated, and the computer was in Mitchell's lap. Spears communicated his requests for acts to be performed by Mitchell. Mitchell showed Spears her body, and Mitchell took off her top and bra, but she had her underwear on during her communication with Spears. Spears asked about Mitchell's daughter. Spears asked Mitchell to take off A.M.'s clothing, but she did not do that; A.M. had on her shirt and a diaper. According to her testimony, when Spears asked Mitchell to hold A.M. to her breasts, A.M. was in her lap, and all that Spears could see was the back of A.M.'s head. Spears asked Mitchell to insert her finger into A.M. When asked that, A.M. was standing at Mitchell's side. Mitchell said she did not insert her finger into A.M. She testified that the reason she told Rivera in her interview that she had done so was because, "So I just felt like, okay, if I go ahead and tell them that I did something, and I tell them that I was abused, my state of mind at the time was they would put me in like counseling and I would be able to get [A.M.] back." Mitchell testified A.M. did not put her hand in Mitchell's vagina. The laptop was on Mitchell's lap, so all Spears could see through the computer camera was A.M.'s hand go under the computer and her finger pull on A.M.'s diaper. Mitchell stated she shook her finger in A.M.'s diaper, but she was never touching A.M. Mitchell stated she never touched A.M.'s vagina, clitoris, or anything on her body. Mitchell said she lied to the detective when she told him A.M. bit her breast and that A.M. was naked. When interviewed by Rivera, Mitchell did not think the things she admitted doing to A.M. during the Skype communication, including touching A.M. on the naked lips of her vagina, were things for which she would get in trouble. Mitchell said Miller was untruthful in her testimony that Mitchell told her both Mitchell and A.M. were naked during the Skype computer

communication with Spears, despite the transcript of the computer communication in which Spears communicated he would pay one thousand dollars to see both Mitchell and A.M. naked and Mitchell's response that she would do that.

In mid-September 2010, A.M. was taken to Children's Medical Center of Dallas for examination in connection with the Referral Evaluation of At Risk Children program (the REACH program), consisting of a group of doctors who perform medical exams on children when there is concern regarding physical abuse, sexual abuse, or neglect. Dr. Cathleen Lang, a board certified pediatrician affiliated with the REACH program testified at trial. Dr. Lang testified that penetration of a female's sexual organ means the plane between the two labia or "lips" that close over the genitalia area has been broken. The term does not mean penetration "all the way in the vagina;" it means passing the plane of the labia. Rubbing between the labia without entry into the vagina is considered penetration and constitutes sexual abuse, but can result in a normal genital examination.

Before being examined by Dr. Lang, A.M. was examined by Dr. Michael Sea in the emergency room. Dr. Sea reported A.M.'s hymen was normal and he did not see any tears or trauma and found no abnormality with A.M.'s vagina. A.M. was then examined by the REACH program doctors. Dr. Lang testified A.M.'s external genital examination was normal. There was a separation of the labia from the edge of the hymen in the vestibule, or superficial tearing on the outside. Dr. Amy Barton, who participated in A.M.'s examination, concluded the separation was consistent with penetration. Dr. Lang testified the superficial tearing would not have been related to any event on August 26, 2010, because this particular injury would have healed by the time A.M. was seen by Dr. Lang in mid-September. In a follow-up examination of A.M. the next week, the area had completely healed.

Mitchell was charged with intentionally and knowingly causing the unlawful penetration of the female sexual organ of A.M., a child younger than six years of age, by Mitchell's finger. A jury found Mitchell guilty and sentenced Mitchell to twenty-five years' imprisonment. Mitchell filed this appeal.

## Legal Sufficiency of the Evidence

In her first point of error, Mitchell contends the evidence is legally insufficient to prove she penetrated A.M.'s sexual organ with her finger. According to Mitchell, there was not more than a "mere modicum" of probative evidence of the penetration element of the offense, and the evidence conclusively established reasonable doubt.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see also Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. We defer to the jury's determination of credibility, and may not substitute our judgment for that of the fact finder. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute [its] judgment for that of the jury"). To address Mitchell's point of error, we must determine whether the evidence presented to the jury, viewed in the light most favorable to the

guilty verdict, was sufficient for a rational jury to find Mitchell penetrated A.M.'s sexual organ with her finger.

Evidence at trial included the testimony of Dr. Lang that penetration of a female's sexual organ means the plane between the two labia or "lips" that close over the genitalia area has been broken. The term does not mean penetration "all the way in the vagina;" it means passing the plane of the labia. Rubbing between the labia without entry into the vagina is considered penetration. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (penetration within the meaning of penal code section 22.021 occurs so long as contact with female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with outer vaginal lips); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) (touching beneath the fold of the external genitalia amounts to penetration within meaning of aggravated sexual assault statute); *Aylor v. State*, 727 S.W.2d 727, 729–30 (Tex. App.—Austin 1987, pet. ref'd) ("genitals" includes more than the "vagina" and includes the tissue immediately surrounding the vagina; court of appeals "detect[ed] no difference in the term 'genitals' or 'genitalia,' and 'female sexual organ.'").

Wills testified regarding the content of the communications between Mitchell and Spears, and the transcript of the computer communication was introduced into evidence. Mitchell had her two-year-old daughter, A.M., perform acts as instructed by Spears. Spears instructed Mitchell to rub A.M.'s "butt hole" and "pussy hole." Spears instructed Mitchell to lick her finger, and Spears communicated to Mitchell that "obviously" Mitchell could not get her finger deep, but instructed Mitchell to show him how deep Mitchell could insert her finger. Spears communicated, "A tiny bit," and "Deeper is more $$." Spears again instructed Mitchell to lick her finger, get it wet, and "now do it." Mitchell responded, "Ok." Spears then instructed, "Do it. In pussy. Have [A.M.] rub your pussy now." Mitchell responded, "Ok."

Miller testified regarding her interview of Mitchell. Mitchell told Miller that Spears communicated Mitchell would receive money if she "did things" with her child. Mitchell told Miller she rubbed A.M.'s vagina with her hand.

A videotape of Mitchell's interview by Rivera at the police station was shown to the jury. In that video, Mitchell told Rivera, "I put my hand by her thing" and demonstrated on the police videotape what she was describing. Referring to the "lips" of A.M.'s vagina, Mitchell stated she "wasn't deep in there." Mitchell told Rivera her "fingers were on her lips." She demonstrated moving her hand back and forth "up past A.M.'s pee pee hole." Mitchell stated her hand was "down there between [A.M.'s] pee hole" and vagina.

At trial, Mitchell testified she did not insert her finger into A.M. She testified the reason she told Rivera she had done so was because, "So I just felt like, okay, if I go ahead and tell them that I did something, and I tell them that I was abused, my state of mind at the time was they would put me in like counseling and I would be able to get [A.M.] back." When interviewed by Rivera, Mitchell did not think the things she admitted doing to A.M. during the Skype computer communication, including touching A.M. on the naked lips of her vagina, were things for which she would get in trouble.

Based on the record, we conclude a rational trier of fact could have found beyond a reasonable doubt that Mitchell penetrated A.M.'s sexual organ with her finger. We conclude there is legally sufficient evidence to support the jury's finding, and we resolve Mitchell's first point of error against her.

### Variance Between Indictment and Proof at Trial

In her second point of error, Mitchell argues there is a fatal variance between the indictment and the proof of the statutory elements of the offense at trial that rendered the evidence insufficient to support the conviction. According to Mitchell, the indictment alleged

digital penetration of complainant's sexual organ by Mitchell, but the evidence indicated contact between complainant's mouth and Mitchell's sexual organ.

The State responds there was no such fatal variance. The State argues that it alleged and proved Mitchell's finger penetrated A.M.'s sexual organ, and the fact that the State also proved A.M. licked Mitchell's sexual organ does not negate the State's proof of the offense as alleged.

A variance occurs when there is a discrepancy between the charging instrument and the proof offered at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). A variance in pleading and proof can involve either the statutory language that defines the offense or a non-statutory allegation that is descriptive of the offense in some way. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 536 (2012). Only a material variance between the charging instrument and proof at trial will render the evidence insufficient to support the conviction. *Gollihar*, 46 S.W.3d at 257. A variance is material if the indictment did not inform the defendant of the charge against him sufficiently to allow him to prepare an adequate defense or if prosecution under the deficiently drafted indictment would subject the defendant to the risk of a second prosecution for the same crime. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Id*. at 253. Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. While immaterial variances may be disregarded, material variances must be included in the hypothetically correct jury charge. *Id*. at 257.

A person commits aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i). Mitchell was charged with penetrating A.M.'s sexual

organ with her finger, and the State was, therefore, required to prove beyond a reasonable doubt that Mitchell penetrated A.M.'s sexual organ with her finger.

According to Mitchell, the evidence at trial was such that Mitchell committed an offense that was not alleged, that being Mitchell causing A.M.'s mouth to contact Mitchell's sexual organ. In support of this contention, Mitchell states that, "[s]ince failure to prove the statutory language that was pled always constitutes a material variance, the evidence was legally insufficient to support the conviction." However, as more fully discussed above with regard to Mitchell's first point of error, we concluded the evidence is legally sufficient to prove beyond a reasonable doubt the charge against Mitchell of digitally penetrating A.M.'s sexual organ. That the evidence at trial also related to whether Mitchell caused A.M.'s mouth to contact her sexual organ does not negate the sufficiency of the evidence at trial of the facts alleged in the indictment of digital penetration of A.M.'s sexual organ.

We are unpersuaded by Mitchell's argument. We conclude there is no variance between the facts alleged in the indictment and the proof offered at trial. Accordingly, we resolve Mitchell's second point of error against her.

### Admission into Evidence of Computer Communication Transcript

In Mitchell's third point of error, she asserts the transcript of the computer communication between Mitchell and Spears, "which indicated that a non-testifying anonymous accomplice saw [Mitchell] commit the offense" was admitted in evidence in violation of Mitchell's rights under the Confrontation Clause of the Sixth Amendment. The State responds that Mitchell's right to confront witnesses was not violated by the admission of the transcript of the computer communication, citing *Crawford v. Washington*, 541 U.S. 36 (2004), and Mitchell waived her complaint, citing *Bruton v. United States*, 391 U.S. 123 (1968).

Mitchell filed a motion in limine as to "[a]ny evidence or testimony obtained by the State of Texas by or as a result of any statement allegedly made by [Mitchell] in the August 26, 2010" computer communication. According to Mitchell's motion in limine, the transcript of the computer communication was inadmissible under the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See* U.S. CONST. amend. VI ("In all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him."). In support of her motion in limine, Mitchell's counsel argued the computer communication was out-of-court testimony by a "co-defendant," an individual who had not been charged, had not been located, and would not be available to testify at trial and be subject to cross-examination. Accordingly, Mitchell argued that the unavailability of the individual with whom Mitchell was exchanging computer messages and the inability to cross-examine that individual deprived Mitchell of her right of confrontation of that witness under the Sixth Amendment, and the transcript of the computer communication should have been excluded from the evidentiary record because the prejudicial effect outweighed the probative value of the information. The trial court denied Mitchell's motion in limine. A pre-trial motion in limine does not qualify as a running objection to admission of evidence. *See Gilchrest v. State*, 904 S.W.2d 935, 938 (Tex. App.—Amarillo 1995, no pet.). However, in this case, the trial court granted Mitchell a running objection to the admission of the transcript of the computer communication in evidence, and Mitchell preserved this point of error for appeal. *See Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991) (so long as running objection constituted timely objection stating specific grounds for the ruling movant desired the court to make, if specific grounds were not apparent from context of the running objection, then error should be deemed preserved by appellate court).

–13–

In *Crawford*, the United States Supreme Court held that testimonial hearsay statements of witnesses absent from trial are admissible over an objection under the Confrontation Clause of the Sixth Amendment only where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 57–60. As explained in *Brooks v. State*, 132 S.W.3d 702, 707 (Tex. App.—Dallas 2004, pet. ref'd), the threshold question imposed by *Crawford* is whether the proffered out-of-court statement is "testimonial" in nature. In her appellate brief, Mitchell discussed *Crawford*. However, at oral submission of this appeal, Mitchell's counsel conceded that the content of Spears's messages to Mitchell in the computer communication are not testimonial statements and that Mitchell was not relying on *Crawford* as support for an argument that the trial court erred in admitting the transcript of the computer communication into evidence. *See also Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011) (to determine if statement is testimonial, we must decide whether it had "a primary purpose of creating an out-of-court substitute for trial testimony"); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309–10 (2009) (quoting *Crawford*, 541 U.S. at 51–52) ("testimonial statements" may include ex parte in-court testimony or its functional equivalent, extrajudicial statements contained in formalized testimonial materials, and statements made under circumstances which would lead an objective witness reasonably to believe the statement would be available for use at a later trial).

Instead, Mitchell now argues the transcript of the computer communication was inadmissible under *Bruton*. *Bruton* involved the joint trial of co-defendants where a non-testifying defendant's statement that incriminated the other defendant was introduced into evidence. *Bruton*, 391 U.S. at 124–25. In *Schneble v. Florida*, 405 U.S. 427 (1972), the United States Supreme Court explained that, in *Bruton*, it held "that the admission of a confession of a co-defendant who did not take the stand deprived the defendant of his rights under the Sixth

Amendment Confrontation Clause, when that confession implicated the defendant." *Id*. at 429–30; *see also Gongora v. State*, 214 S.W.3d 58, 65 (Tex. App.—Fort Worth 2006, pet. ref'd) (under *Bruton* holding, a defendant's Sixth Amendment confrontation and cross-examination rights are violated if, at a joint trial, a non-testifying co-defendant's facially incriminating out-of-court statement is admitted against the other defendant).

As a prerequisite to presenting a complaint for appellate review, the record must show the party "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P.33.1(a)(1)(A). The issue is whether the complaining party brought to the trial court's attention the very complaint the party is now making on appeal.

Mitchell's contention on appeal, relying on *Bruton*, does not comport with her objection at trial to admission in evidence of the transcript of the computer communication based on *Crawford*. *See Dooley v. State*, 65 S.W.3d 840, 842 (Tex. App.—Dallas 2002, pet. ref'd) (complaint on appeal did not comport with trial objection, and, thus, issue not preserved for appellate review).[2] Mitchell's argument before the trial court was that the transcript of the computer communication was inadmissible under *Crawford*. Mitchell's motion in limine and argument at trial were not sufficient to place the trial court on notice of the nature of a purported objection to admissibility of the evidence under *Bruton*. Mitchell did not preserve error based on *Bruton*. *See Thacker v. State*, 999 S.W.2d 56, 60 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (appellant did not preserve *Bruton* error where objection at trial related to inadmissible hearsay); *see also Thomas v. State*, 916 S.W.2d 578, 580 (Tex. App.—San Antonio 1996, no

---

[2] At submission, Mitchell's counsel confirmed she does not contend a *Crawford* objection to admissibility of evidence preserves a *Bruton* objection to admissibility of the evidence.

pet.) (a "trial objection stating one legal basis may not be used to support a different legal theory on appeal").

We conclude the trial court did not err by admitting the transcript of the computer communication into evidence because the content of Spears's messages to Mitchell are not testimonial statements, and Mitchell failed to preserve a complaint the trial court erred in admitting the transcript of the computer communication under *Bruton*. We resolve Mitchell's third point of error against her.

### Hearsay Objection to Medical Records

In Mitchell's fourth point of error, she contends the trial court erred by admitting hearsay contained in medical records relating to A.M.'s visits to Children's Medical Center of Dallas. According to Mitchell, the medical records contained false reports that there was a videotape of Mitchell committing the offense and other sexual abuse of A.M.

We review a trial court's rulings on the admissibility of evidence under an abuse of discretion standard. *See Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). We must affirm the trial court's ruling so long as it lies within the zone of reasonable disagreement. *Billodeau*, 277 S.W.3d at 39. In other words, we must uphold the trial court's ruling if it "was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006) (quoting *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004)).

To preserve a complaint for appeal, the complaining party is required to "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009) (quoting *Lankston v.*

*State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). In reviewing the trial court's decision, we must consider the context in which the complaint was made and the parties' understanding of the complaint at the time. *Id*.

The State moved for admission of A.M.'s medical records from Children's Medical Center of Dallas into evidence. Mitchell's counsel's objection to admission of those medical records was, "Objection, hearsay. I don't think [the witness is] the proper business records custodian . . . ."[3] The trial court overruled that objection. On appeal, Mitchell asserts the trial court erred by admitting the medical records as containing "hearsay that was reported to the physicians who examined" A.M. According to Mitchell, her "general hearsay objection" was sufficient to preserve all error regarding admission of hearsay evidence, since it "shifted the burden to the State to prove that applicable exceptions applied." Assuming that Mitchell's argument on appeal comports with the objection she made at trial, we are not persuaded by the argument. When an exhibit contains both admissible and inadmissible material, the objection to the exhibit must specifically refer to the material that is objectionable. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). If the party who objects to an exhibit containing both admissible and inadmissible evidence does not specify which part of the exhibit is not admissible, the asserted error in admitting the evidence is not preserved for review. *Wintters v. State*, 616 S.W.2d 197, 202 (Tex. Crim. App. [Panel Op.] 1981). Mitchell had the burden to specify objectionable portions of the medical records. *See id*. Mitchell failed to request deletions of specific items in the medical records and failed to specify at trial any portions of the medical records she now asserts on appeal were objectionable. *See Foster v. State*, 779 S.W.2d

---

[3] The medical records were accompanied by an affidavit of the custodian of records of Children's Medical Center of Dallas complying with rule of evidence 902(10). *See* Tex. R. Evid. 902(10)(b).

845, 858 (Tex. Crim. App. 1989). Accordingly, Mitchell's general hearsay objection to the medical records preserved nothing for review. *See id.*

Even if Mitchell had preserved the issue for our review, the trial court did not err by admitting the medical records into evidence. "Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule." *Walters*, 247 S.W.3d at 217; *see* TEX. R. EVID. 802, 803, & 804. Under the business record exception to the hearsay rule, a record kept in the course of a regularly conducted business activity is admissible if it was made at or near the time of the event recorded by a person who had personal knowledge of the event, and if it was the regular practice of that business activity to make the record. *See* TEX. R. EVID. 803(6); *see also Stapleton v. State*, 868 S.W.2d 781, 784–85 (Tex. Crim. App. 1993); *Reyes v. State*, 48 S.W.3d 917, 922 (Tex. App.—Fort Worth 2001, no pet.) (medical records were admissible under rules of evidence 803(6) and 902(10)). We conclude the medical records relating to A.M.'s visits to Children's Medical Center of Dallas were admissible under rule of evidence 803(6) as an exception to the hearsay rule.

We resolve Mitchell's fourth point of error against her.

**Unanimity Instruction**

In her fifth point of error, Mitchell contends the trial court erred by instructing the jury during voir dire that the jury had to unanimously agree that she did not digitally penetrate A.M.'s sexual organ before considering whether the State proved the lesser included offense of indecency with a child by sexual contact. The State responds that Mitchell waived any error by failing to object to the trial court's statement during jury selection, and the trial court did not commit error by instructing the jury regarding its consideration of the greater offense before the lesser included offense.

–18–

During jury selection, the trial court stated the following to the jury regarding a lesser included offense:

> And once you receive the court's charge, there will be instructions and if the evidence – if there's anything raised by the evidence presented, there might be something what we call a lesser-included offense. And that, in this particular case, it would be an indecency with a child that I talked to you about.
>
> In order for the 12 of you to even consider a lesser-included offense, when you go back there and begin deliberations, all 12 of you have to find the defendant not guilty of aggravated sexual assault of a child under the age of six. Hands down, all 12 of you agree that she's not guilty, then you can consider that. Okay.

Mitchell did not object to those statements by the trial court during voir dire. A party must present a timely objection to the trial court to preserve any complaint for appeal. *See* TEX. R. APP. P. 33.1. It is well-established that almost every right may be waived by failing to object. *See Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (waiver of complaint about trial court's explanation of reasonable doubt standard during voir dire where appellant failed to renew objection when explanation was later repeated by the trial court); *see also Moore v. State*, 907 S.W.2d 918, 923 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (wavier of complaint about trial court's comment on the weight of the evidence during voir dire). "Where no objection is made, remarks and conduct of the court may not be subsequently challenged *unless they are fundamentally erroneous*." *Moore*, 907 S.W.2d at 921 (emphasis in original) (quoting *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978)). Fundamental error "is error that is so egregious and creates such harm that the defendant has not had a fair and impartial trial." *Id*. Here, the alleged error is not fundamental, and, therefore, an objection was required to preserve the issue for appellate review. *See id*. (objection required because right to a trial free of judge's comment on weight of evidence is not fundamental). Because Mitchell did not object to the trial court's statements during voir dire, Mitchell has waived her complaint on appeal regarding those statements.

In her argument in support of this point of error, Mitchell states the trial court reiterated instructions in the jury charge that the jury was required to render its decision unanimously. The jury charge included the following instructions:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 26th day of August, in Dallas County, Texas, the defendant, Christen Mitchell, did intentionally or knowingly cause the penetration of the female sexual organ of [A.M.], a child, who was not then the spouse of defendant, by an object, to wit: the finger of the defendant, and at the time the child was younger than six years of age, then you will find defendant guilty of Aggravated Sexual Assault of a Child under the age of six as charged in the indictment. If you have a reasonable doubt thereof, you will acquit the defendant and proceed to consider the lesser included offense of Indecency with a Child under the age of seventeen.

> Now, if you find from the evidence beyond a reasonable doubt that on or about August 26th, 2010 in Dallas County, Texas, that the said defendant, Christen Mitchell, did then and there, intentionally or knowingly engage in sexual contact with complainant [A.M.], a child, who was not then the spouse of said defendant, by contact between the hand of the defendant and the genitals of the complainant, with the intent to arouse or gratify the sexual desire of another person or the defendant then you will find the defendant "guilty" and say so by your verdict. If you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty."

> If you find from the evidence beyond a reasonable doubt that the defendant is either guilty of Aggravated Sexual Assault of a Child under the age of six or Indecency with a Child Contact, but you have reasonable doubt as to which said offense she is guilty, then you must resolve that doubt in defendant's favor and find her guilty of the offense of Indecency with a Child Contact.

Mitchell did not object to the jury charge.

A claim of error in the jury charge is reviewed using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); *see also Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). The first step is to determine whether there is error in the charge. *Barrios*, 283 S.W.3d at 350; *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). If there was properly objected to error, reversal is required if the error is "calculated to injure the rights of the defendant," which the court of criminal appeals has defined to mean "some harm." *Barrios*, 283

S.W.3d at 350 (quoting *Almanza*, 686 S.W.2d at 171). If the error was not objected to, it must be fundamental and will require reversal only if it was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Id.*; *Almanza*, 686 S.W.2d at 171.

Our first duty is to decide if error exists. *Middleton*, 125 S.W.3d at 453. Only if we conclude there was error, do we then analyze that error for harm. *Id.* The proper construction of the jury charge in this case is controlled by *Barrios*. Reaffirming and clarifying its prior holding in *Boyett v. State*, 692 S.W.2d 512 (Tex. Crim. App. 1985), the court of criminal appeals held in *Barrios* that the type of instruction at issue in this case is a proper sequencing instruction that does not require the jury to unanimously agree that a defendant is not guilty of the greater offense before considering a lesser-included offense. *Barrios*, 283 S.W.3d at 352–53; *see Boyett*, 692 S.W.2d at 516.

In an argument similar to the one Mitchell makes here, the appellant in *Barrios* claimed that a charge instructing the jury to "acquit" the defendant if it had a reasonable doubt that he was guilty of the greater offense before next considering the lesser offense was at odds with the charge's benefit-of-the-doubt instruction which required the jury to look at the charge as a whole. *Barrios*, 283 S.W.3d at 352. In other words, if the defendant was convicted of the greater offense, the inquiry ended. *Id.* If the jury "acquitted" the defendant of the greater offense, then the jury made a unanimous decision regarding that offense, and thus there is "nothing to compare the lesser-included offense to when subsequently considering the instruction on benefit of the doubt." *Id.* The appellant contended that the disposition of the greater offense had by that time already been decided by the jury, and the instruction on benefit of the doubt became superfluous. *Id.*

The court of criminal appeals rejected the appellant's argument and stated the appellant's conclusion arose from a narrow interpretation of the jury charge. *Id.* "Unanimous verdicts are

the final decisions by the jury, delivered to the court after its deliberations are complete." *Id*. Under the sequencing instruction, the order in which the parts of the jury charge were considered was left to the discretion of the jury. *Id*. The jury charge properly informed jurors to consider instructions on lesser included offenses. *See Boyett*, 692 S.W.2d at 516. The trial judge reads the entire charge to the jury before it retires to deliberate. *Barrios*, 283 S.W.3d at 353. Thus, the jurors will have heard the instruction on the benefit of the doubt before considering the issue of guilt on any of the offenses included in the charge. *Id*. "Therefore, even if, and perhaps especially if, the jurors cannot agree as to guilt on the greater offense, they have already been instructed that they may consider guilt as to the lesser offense before deciding on a verdict as to the greater offense." *Id*. The court of criminal appeals observed that the charge's "inartful use" of "will acquit," when the intended meaning seems to be "have a reasonable doubt of or cannot agree on guilt," could perhaps confuse a jury, although there was no indication that it did so in that case; the jury found the appellant guilty of the greater offense. *Id*. "It may be that a better practice is for trial courts to include an instruction that explicitly informs the jury that it may read the charge as a whole, and to substitute 'or if you are unable to agree, you will next consider' for 'you will acquit . . . and next consider' so that the charge makes clear to the jury that, at its discretion, it may consider the lesser-included offenses before making a final decision as to the greater offense." *Id*. The court held, however, that the charge allowed the jury to consider the entire charge as a whole and that the sequencing instruction did not require the jury to unanimously agree that a defendant was not guilty of the greater offense before it could consider a lesser included offense, and the charge was not erroneous. *Id*. Concluding there was no error in the jury charge, the court of criminal appeals did not consider whether the appellant was harmed. *Id*.[4]

---

[4] In *Fuentes*, appellant contended the State contradicted the court's charge in closing argument during the guilt phase of trial by telling the jurors

We therefore conclude that the virtually identical instruction in this case was a sequencing instruction that did not require that the jury unanimously agree to acquit Mitchell of the greater offense before proceeding to consider the lesser included offense. Rather, we conclude the instruction at issue allowed the jury to consider the charge as a whole, and the jury could consider the lesser-included offense before making a final decision on the charged offense. Despite the "inartful" language of the charge, it adequately instructed the jury and was not erroneous. *See Barrios*, 283 S.W.3d at 353.

Accordingly, we resolve Mitchell's fifth point of error against her.

### Conclusion

We resolve Mitchell's points of error against her. We affirm the trial court's judgment.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
Tex. R. App. P. 47

120211F.U05

---

they all had to agree the appellant was not guilty of capital murder before they could consider the lesser included offenses. *Fuentes*, 991 S.W.2d at 274. The appellant argued the assertion conflicted with the portion of the charge that provided:

> If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder or aggravated robbery, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve the doubt in the defendant's favor and find him guilty of the lesser offense of aggravated robbery.

*Id*. In denying its argument contradicted the court's charge, the State relied on a part of the charge which provided:

> [I]f you have a reasonable doubt [about the appellant's guilt as to the capital murder charges] you will acquit the defendant of capital murder and *next* consider whether the defendant is guilty of aggravated robbery.

*Id*. The court of criminal appeals concluded the State's argument was not inconsistent with the law as stated in the charge. *Id*. *See also Slater v. State*, No. 02-11-00368-CR, 2013 WL 2631194, at *1 (Tex. App.—Fort Worth June 13, 2013, no pet. h.) (mem. op., not designated for publication) (appellant complained jury charge misled jury and required jury to unanimously decide guilt or innocence as to greater offense of capital murder before considering whether appellant was guilty of any lesser offenses described in charge; relying on *Barrios*, appellate court concluded trial court did not commit error).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTEN MITCHELL, Appellant

No. 05-12-00211-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-61101-U.
Opinion delivered by Justice Fillmore, Justice Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 16th day of July, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE