

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00310-CR

_____

CRISTI JEANETTE SNOW, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1445315D

Before Sudderth, C.J.; Pittman and Bassel, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

A jury convicted Cristi Jeanette Snow of two counts of sexual performance of a child under age fourteen. *See* Tex. Penal Code Ann. § 43.25(b), (c). The jury assessed Snow's punishment at thirty years' confinement on both counts. The trial court ordered the sentences to run concurrently. Snow appeals, raising eight issues.

Most of Snow's issues center on the search of her cell phone and the admission of a transcription of a social media chat and photographs that law enforcement extracted from her cell phone. Snow forfeited most of the arguments she makes on appeal. But even if we reached the merits of her arguments, the trial court would have acted well within its discretion to overrule Snow's contentions that (1) evidence of the chat and photos were not properly authenticated, (2) introduction of the chat violated Snow's right to confront a witness against her or allowed the introduction of hearsay, (3) an omission from the affidavit used to obtain a warrant to search the cell phone's contents vitiated the finding of probable cause required to issue the warrant, and (4) the theft of the cell phone from Snow warranted its suppression.

We also overrule Snow's contentions that do not center on her cell phone. The trial court did not abuse its discretion by excluding evidence of Complainant's sexual history or that she might be gay. Nor did the trial court abuse its discretion by excluding a psychologist's opinions that Snow has a low IQ and suffers from dependent personality disorder.

Because we overrule each of Snow's complaints, we affirm.

## I. Background[1]

Complainant occupied a home with several other adults and children. Some of the occupants were Complainant's relatives, and some were not. Snow had lived with and had a child with Complainant's uncle. Though the relationship had ended, Snow continued to live in the home. Complainant viewed Snow as her best friend.

Both Complainant and Snow used a third-party messaging app called KIK. Snow admitted that she had numerous chats on KIK.

On an occasion when most of the others living in the home were gone, Snow was chatting with an individual who used the name King gnol. Both Complainant and Snow were in Snow's bedroom while Snow chatted with King gnol. During the chat, King gnol asked that Snow take nude photos of both her and Complainant and send those to him. Complainant was thirteen years old at the time. Eventually, Complainant took a nude photo of Snow, and Snow took nude photos of Complainant. Snow transmitted these pictures to King gnol.

The existence of the photos came to light when Complainant's uncle examined the photo gallery on Snow's cell phone. The uncle knew that Snow stored nude pictures of herself on her cell phone. Children in the home sometimes used Snow's cell phone, and the uncle did not want them seeing the nude pictures. When the

---

[1]Snow does not raise a sufficiency challenge. At this point, we provide only those facts necessary to give context to Snow's complaints on appeal. Our discussion of Snow's issues will outline additional facts relevant to her arguments.

uncle checked the cell phone to determine if the photos of Snow had been deleted, he discovered nude photos of Complainant.

The uncle showed the photos to his mother—Complainant's grandmother. Complainant's grandmother took possession of the cell phone and then delivered it to the police the next day.

A forensic interview of Complainant was conducted to obtain her recollection of events. After obtaining a search warrant, police forensically examined Snow's cell phone. The examination revealed the chat between Snow and King gnol and the photos of Snow and Complainant that had been transmitted during the chat. Police subsequently interviewed and arrested Snow.

## II. Standard of Review and Law on Preservation[2]

A trial court's decision concerning the admission or exclusion of evidence and concerning the extent of cross-examination is reviewed under an abuse-of-discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) (concerning the admission or exclusion of evidence); *Cantu v. State*, 939 S.W.2d 627, 635 (Tex. Crim. App.) (concerning the extent of cross-examination). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

---

[2]Because many of Snow's arguments challenge the admission or exclusion of evidence and involve questions of preservation, we set forth the standard of review for the admission or exclusion of evidence, as well as the law on preservation, only once and refer to it as necessary. When warranted, other standards of review are set forth within the issues.

4

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). The proponent also has the responsibility to, "at the earliest opportunity, [do] everything necessary to bring to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question." *Bonilla v. State*, 452 S.W.3d 811, 817 (Tex. Crim. App. 2014). A complaint is not preserved "if the legal basis of the complaint raised on appeal varies from the complaint made at trial." *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). To determine whether a complaint on appeal comports with a complaint made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

**III. Snow forfeited her contention that the trial court erred by admitting text messages and pictures from her cell phone because the messages and pictures were not properly authenticated. Even if error were not forfeited, her contention is meritless.**

In her first issue, Snow argues that the text messages and pictures on her cell phone were not properly authenticated without proof from a sponsoring witness who had "direct knowledge" that Snow had sent the messages or had personally observed

5

Snow type the messages. Snow forfeited this contention by failing to make an adequate objection in the trial court. And even if an adequate objection were made, the arguments that Snow raises go to the weight that the jury should have accorded the evidence and not its admissibility. Finally, even if we were to adopt Snow's "direct knowledge" standard of authentication, the record contains proof that Snow authored the texts and took the photos.

**A. Snow's vague statements at the time of the proffer of the messages and pictures forfeited an objection that the evidence was not properly authenticated.**

The record is a muddle of statements not phrased as objections, objections that did not mention the statements that Snow now relies on as authentication objections, and confusion as to what exhibits the statements and the objections were directed. This muddle failed to preserve the appellate complaint that Snow makes in her first issue.

Snow phrases her first issue as a challenge to the admission of both the pictures and text messages. Her brief mentions a statement made by her counsel that asked if the sponsoring witness knew who had sent State's Exhibit 24, which was a photo. The sponsoring witness answered that "sillygirlgonewild Cristi Snow" had sent the photo. The State, however, did not proffer the photo until five pages later in the record, when it proffered the photo and seven other exhibits. After the officer stated who had sent the photo, Snow objected to the witness reading from a document not in evidence and stated, "[W]ho sent it is a different question than what the phone

6

actually shows." At the prompting of the trial court, the State then offered Exhibit 21, which contained the text message "chat" with King gnol and which was the document the witness had read from to identify who had sent the photos (such as State's Exhibit 24) that were attached to it. The objection made to the introduction of State's Exhibit 21 stated its grounds as only hearsay and denial of the right to confrontation. When State's Exhibit 24 and seven other documents were later proffered, Snow's counsel stated only, "Same objection."

Thus, what Snow relies on as an objection was a vague statement, not phrased as an objection, that was made about a photo that was not even being proffered at the time the statement was made and in response to which the trial court made no ruling. When the text of the chat was proffered, Snow made no objection based on a lack of proper authentication. When the photo was eventually proffered, Snow made no authentication objection. We have searched the record and have not found a reference to the word "authentication" or to Texas Rule of Evidence 901 that states the standard for authentication.

Even a general authentication objection, without more, is not adequate to preserve a complaint on appeal. *Guaderrama v. State*, No. 02-14-00500-CR, 2016 WL 828325, at *4 (Tex. App.—Fort Worth Mar. 3, 2016, no pet.) (mem. op., not designated for publication) (concluding that general authentication objection was "improper authentication objection" and inadequate to preserve complaint on appeal); *Trotty v. State*, No. 02-12-00537-CR, 2014 WL 2538806, at *3 (Tex. App.—Fort Worth

June 5, 2014, no pet.) (mem. op., not designated for publication) (same). And what Snow relies on as an objection falls short of even a general authentication objection. It is not phrased as an objection. It is not directed to the exhibit being proffered. It is not referenced in the objection that was actually made. The record contains no objection claiming that any exhibit was not properly authenticated or anything that could be construed as making such an objection. We therefore conclude that Snow failed to preserve her first issue.

**B. Authentication of material extracted from a cell phone does not require "direct knowledge" from a sponsoring witness that the defendant typed the extracted data into the phone or took a picture contained on the phone.**

Even assuming that Snow preserved her first issue, she nevertheless would not prevail. Snow does not contest that she owned the cell phone from which the chat and photographs were extracted. In fact, one of her issues on appeal is that the material extracted from the cell phone should have been excluded from evidence because the phone was allegedly stolen from her and given to law enforcement. Nor can she sincerely contend that she did not participate in the chat forensically extracted from the cell phone; the jury watched her interview by law enforcement in which she admitted both that she had participated in the chat and that she had taken the pictures transmitted during that chat.[3] Still, she claims that a possibility exists that someone else accessed her cell phone, participated in the chat, and took the pictures. In

_____

[3]This opinion will later outline in detail what Snow said about the chat during her interview with police.

essence, Snow claims that the State bore the burden to negate any possibility inconsistent with her being a participant in the chat in order to authenticate data extracted from the cell phone. The State, however, did not bear that burden in order to authenticate the cell phone data.

This court recently discussed how to authenticate data extracted from a cell phone. *See McLemore v. State*, No. 02-15-00229-CR, 2016 WL 4395778, at *5–6 (Tex. App.—Fort Worth Aug. 18, 2016, pet. ref'd) (mem. op., not designated for publication). The appellant in *McLemore* made an argument similar to Snow's, contending that the ease of accessing a cell phone should cause "this [c]ourt [to] adopt a standard by which contents of a cell phone must be authenticated in a way that definitely shows who accessed the certain website and who performed the internet search" found on the phone. *Id.* at *5. This court disagreed, initially noting that Texas Rule of Evidence 901(a) provides that "authentication requires a proponent of evidence to show that an item is what the proponent claims it is." *Id.* "Authenticity of evidence is a preliminary admissibility question" that the trial court makes in its discretion. *Id.* But the ultimate question of whether evidence is what the proponent of the evidence claims it to be is left to the factfinder. *Id.*

Circumstantial evidence is one means of proof to meet the initial burden of showing that proffered evidence is what the proponent claims that it is. *Id.* at 6. In *McLemore*, the appellant's control of the cell phone and the fact that the victim was shown material on the phone that corresponded to the data extracted from the phone

9

was circumstantial evidence of the appellant's ownership and that the data extracted from it resulted from his use of the phone. *Id.*

The opinion in *McLemore* concluded by holding that the burden of authentication does not require the proponent to negate "all other possibilities inconsistent with authenticity." *Id.* Instead, the jury could assess those possibilities when it ultimately weighed the evidence—"the possibilities that someone accessed the data before appellant owned the phone or while he owned it but was not in possession of it are alternate scenarios that the jury was entitled to assess upon the admission of the evidence." *Id.*

Here, direct evidence established Snow's ownership of the cell phone. Others in the household took the cell phone from Snow and delivered it to police. The record also contains direct evidence—Snow's admissions during her interview by police—that she had participated in the chat extracted from the cell phone. Even if we were to hold that the State bore the burden to negate possibilities inconsistent with the State's claims of authenticity, the record in this case negates those possibilities.

Simply, Snow repeats the arguments that we rejected in *McLemore*. Beyond that, the record negates any challenge that Snow could make that some other person participated in the chat that was extracted from the cell phone or took the pictures attached to that chat. If the trial court had faced a valid objection challenging the

authentication of the cell phone data, it would have acted within its discretion to reject that objection.

We overrule Snow's first issue.

**IV. Snow forfeited her contention that admitting text messages from her cell phone deprived her of the right to confront a witness against her. Even if error were not forfeited, her contention is meritless.**

In her second issue, Snow renews her attack on the admission of the text message chat between her and King gnol. This attack fails because Snow's global objection forfeited the claim of error that she raises in her second issue. Further, Snow admits, and case law confirms, that the text messages were not testimonial statements that implicate the right to confrontation.

**A. Snow's global objection forfeited her objection.**

We again deal with the muddle highlighted in our discussion of Snow's first issue. In this discussion, we must also interpret what Snow's brief is asking us to review. After this exercise, we conclude that Snow contends that State's Exhibit 21, which portrays the text chat between "sillygirlgonewild Cristi Snow" and "King gnol," should have been excluded because Snow did not have the ability to cross-examine the person sending the King gnol texts. Moving forward from this premise, the exhibit also contained material that Snow does not contend should have been excluded—the "sillygirlgonewild Cristi Snow" texts. Snow, however, never differentiated for the trial court which part of the exhibit should have been excluded. Thus, the flaw in the objection and why she forfeited error.

11

Specifically, the record reveals that State's Exhibit 21 is twenty pages long and has approximately ten texts per page. The participants in the chat are identified as sillygirlgonewild Cristi Snow and King gnol. When the State proffered Exhibit 21, Snow objected, "I will object to State's Exhibit 21 on the grounds that it[]--contains hearsay, as well as denies us the right to confrontation of whoever may all be using these assumed names." Snow also obtained a running objection of an unspecified nature. Pictures sent during the chat were later proffered, and at that point, Snow stated, "Same objection."

Snow's brief focuses on the location of King gnol and the consequences of the admission of his texts. Specifically, Snow references the testimony of the officer who extracted the information from her cell phone and how he highlighted that the texts from King gnol originated from an IP address in Australia. Her brief identifies the problem with the King gnol texts as follows: "Appellant never had access to him[,] and Appellant was not able to cross[-]examine him. Allowing these messages to come into the trial violated Appellant's rights to confront [her] accusers under the 6th [A]mendment."

Thus, we view Snow's issue as complaining that the trial court admitted State's Exhibit 21 without redacting the texts of King gnol. But Snow brought that complaint to the attention of the trial court through a global objection that placed the burden on the trial court to sift the portions of State's Exhibit 21 that Snow felt were

12

admissible and those that were not. The Texas Court of Criminal Appeals is clear that this approach gives the trial court carte blanche to overrule the objection:

> The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection.

*Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992), *overruled on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001); *see Mims v. State*, No. 03-13-00266-CR, 2015 WL 7166026, at *7 n.31 (Tex. App.—Austin Nov. 10, 2015, pet. ref'd) (mem. op., not designated for publication) (collecting cases holding that the failure to identify which portion of the items within a proffered exhibit are inadmissible forfeits a claim of error). Snow's global objection to State's Exhibit 21 preserved nothing for our review.

## B. The text messages exchanged in the chat were not testimonial statements; thus, Snow does not have a Confrontation Clause complaint.

Even if Snow had not forfeited her complaint by making a global objection to State's Exhibit 21, she concedes, and we agree, that the text messages were nontestimonial statements. Thus, the admission of the texts did not implicate Snow's Sixth Amendment right to confront a witness against her. Further, the nontestimonial character of the texts ends the discussion of the application of the Confrontation Clause.

13

### 1. Standard of review to determine Snow's Confrontation Clause contentions

We review whether a statement is testimonial or nontestimonial for purposes of determining the application of the Sixth Amendment under a de novo standard of review. *Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006).

### 2. Snow concedes the text messages are nontestimonial statements, and we agree.

At its most elementary level, the Confrontation Clause of the United States Constitution ensures the right of a defendant to cross-examine witnesses whose statements are used against him or her. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004). But only statements that are testimonial in nature potentially violate the Confrontation Clause. *See id.* at 68, 124 S. Ct. at 1374.

To distinguish between testimonial and nontestimonial statements, this court recently explained:

> "[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). In determining whether a statement is testimonial, we review the objective purpose of the statement, not the declarant's expectations. *Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011). Statements are testimonial when the circumstances objectively indicate that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. *Id.*

*Florez v. State*, No. 02-16-00195-CR, 2017 WL 2471095, at *5 (Tex. App.—Fort Worth June 8, 2017, no pet.) (mem. op., not designated for publication).

14

We cannot see how the texts exchanged in State's Exhibit 21 constitute testimonial statements. Many courts hold that conversations like those reflected in State's Exhibit 21 are not testimonial statements. *See Stephenson v. State*, No. 07-11-00017-CR, 2011 WL 4027721, at *1 (Tex. App.—Amarillo Sept. 12, 2011, no pet.) (mem. op., not designated for publication) (text messages sent during a confidential conversation between friends were not testimonial); *Davis v. State*, 268 S.W.3d 683, 709 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that statements made in a cell phone call conducted in the presence of a friend were not testimonial because there was no indication they were made under circumstances that would lead an objective witness to believe they would be available for use at a later trial); *see also Woods v. State*, 152 S.W.3d 105, 114 (Tex. Crim. App. 2004) (stating that spontaneous statements to acquaintances are not testimonial); *Freeman v. State*, 230 S.W.3d 392, 401 (Tex. App.—Eastland 2007, pet. ref'd) (stating the same). In her brief, Snow agrees that the text messages were not testimonial statements.

Having conceded that the statements at issue are nontestimonial, Snow relies on the pre-*Crawford* case of *Ohio v. Roberts*, arguing that because *Crawford* did not "directly address" nontestimonial statements, "the earlier Supreme Court decision in *Ohio v. Roberts* should be the proper test." 448 U.S. 56, 100 S. Ct. 2531 (1980), *overruled by Crawford*, 541 U.S. at 58–68, 124 S. Ct. at 1368–74. Snow further argues that under *Roberts*, the Confrontation Clause applies to the nontestimonial statements that she challenges. But this court has held the contrary. *See Gongora v. State*, 214 S.W.3d 58,

15

63 (Tex. App.—Fort Worth 2006, pet. ref'd) (noting that the United States Supreme Court has "unequivocally limit[ed] any analysis under the Confrontation Clause to only those statements that are testimonial in nature" and holding that "the *Roberts* standard no longer governs the analysis of a non[]testimonial statement under the Confrontation Clause"). And Snow has not asked us to revisit our holding, let alone argued why it is incorrect. We decline to revisit *Gongora* here.

Because the statements that Snow challenges are nontestimonial, the Confrontation Clause is inapplicable. We therefore overrule Snow's second issue.

## V.  The trial court did not err by overruling Snow's hearsay objection to the transcription of the chat that she had with King gnol.

In her third issue, Snow argues that the text messages and pictures constitute inadmissible hearsay. We will discuss Snow's hearsay contentions in the sequence she presents them in her brief.

Initially, Snow cites twenty-nine pages of the record and claims that the police officer who sponsored State's Exhibit 21 was not an eyewitness to the events and that his statements could not be used as "substantive evidence." The record reveals no statements by the officer, other than describing the contents of the King gnol chat and the attachments to it. Snow's brief identifies no statements made by the officer that were anything other than a description of what was extracted from the cell phone as part of its forensic examination. We construe Snow's contention to be a challenge to the contents of the chat extracted from her cell phone. We hold that there was no

16

error in the introduction of that document. Thus, the officer's statements, which go no further than describing the contents of an admissible document, are likewise not objectionable.

Next, Snow challenges the admission of King gnol's texts in the exchange with her. The chat was exactly that—a two-way conversation in which King gnol and Snow responded to each other's texts. King gnol's side of the chat was admissible because it gave context to Snow's statements. When one party's statements made during a conversation constitute admissions, the statements by the other participant in the conversation are admissible to give the other's statements context. *See United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) ("Because Nigro's statements were offered only for context and not for the truth of the matter asserted, those statements are not hearsay under Federal Rule of Evidence 801(c)."). If Snow wanted the jury to consider King gnol's statements only for the limited purpose of giving the statements context, it was her burden to request a limiting instruction, which she did not do. *See* Tex. R. Evid. 105(a)(1) ("A party may claim error in a ruling to admit evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—only if the party requests the court to restrict the evidence to its proper scope and instruct the jury accordingly.").

Finally, Snow contends that the statements contained in State's Exhibit 21 from "sillygirlgonewild Cristi Snow" constitute hearsay "because it was not known whether appellant was the person who [had] sent them." Snow concedes that if she were a

17

participant in the conversation, her statements would constitute admissions and be admissible. The record is directly contrary to Snow's contention that it was unknown who had sent the texts from Snow's side of the chat.

The record demonstrates that Snow acknowledged her participation in the chat, which was transcribed in State's Exhibit 21. When interviewed by law enforcement,[4] Snow was shown a copy of the chat with King gnol, which was identified as chat 696. State's Exhibit 21 was a transcription of chat 696. Initially, Snow shrugged when asked if the chat rang a bell and said that she did not remember that far back. The officer conducting the interview went on to describe what had occurred during the chat. At one point, the officer related that the other participant in the chat had asked the age of Complainant, and Snow responded that she was fourteen. Snow stated at that point, "That's what she told me to tell him." When again asked if the officer's description of the chat was ringing a bell, Snow said, "Some of it, but not really. I can't remember that far back. It's been a long time ago." When asked if she remembered a photo of her transmitted during the chat, Snow responded, "Yeah." Snow also attempted to defend her actions by claiming that Complainant had told her to take a picture during the chat. Snow continued to defend her actions by saying that she could not have taken the picture transmitted during the chat if Complainant had not told her to do so. Admittedly, Snow next said, "I don't remember that far back." But when asked who King gnol was, Snow responded, "I don't know who he is.

_____

[4]Snow's brief makes no mention of the interview.

18

Some guy from Australia." Snow's own comments thus demonstrated her participation in the chat.

Accordingly, we hold that the trial court did not abuse its discretion by overruling Snow's hearsay objection to the transcription of the chat that she had with King gnol, and we overrule her third issue.

**VI. The trial court did not err by excluding statements that Complainant told Snow that she was a lesbian or that she may have had sex with someone. Neither Snow's contention that the trial court mistakenly applied Texas Rule of Evidence 412 nor her contention that the statements were relevant to whether Snow had induced Complainant to engage in a sexual performance show error in the exclusion of the statements.**

In her fourth issue, Snow argues that the trial court erred by redacting parts of the video of her interview with law enforcement over her objections. The trial court conducted a hearing under Texas Rule of Evidence 412 to determine whether to exclude statements that Snow made during the interview with law enforcement—that Complainant was a lesbian and had engaged in sexual relations. The trial court concluded that the evidence was neither admissible nor relevant under rule 412 and that none of the exceptions found in that rule applied. Snow did not argue, as she does on appeal, that rule 412 did not apply to the offense with which Snow was charged. Further, Snow's complaint in the trial court—that the evidence went "to show motive to not tell the truth"—has morphed on appeal into a claim that the statements were relevant to the question of whether Snow induced Complainant's conduct. Snow forfeited both objections.

19

Further, the trial court's mistaken reliance on rule 412 does not mean that the statements were automatically admissible when another legal theory warranted their exclusion. The trial court may have given the wrong reason for excluding the statements. But the statements' lack of relevance still warranted their exclusion.

**A. Snow has forfeited any complaint that the trial court erred by relying on Texas Rule of Evidence 412 to exclude her statements to the investigator and cannot make arguments on appeal that were not presented to the trial court regarding why those statements were admissible.**

Snow argues that the trial court erred by relying on Texas Rule of Evidence 412 to exclude her statements about Complainant's sexual orientation and history. Snow's point is that rule 412 applies only to prosecutions listed in the rule as "for sexual assault, aggravated sexual assault" or an attempt to commit those offenses and does not apply to sexual performance of a child because that offense is not listed in the rule. *See* Tex. R. Evid. 412(a); *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005) (holding that rule 412 "applies to cases of sexual assault, aggravated sexual assault, or an attempt to commit those offenses"). Although we agree, Snow's argument comes too late. At no point did Snow object that the trial court conducted a hearing based on rule 412 or challenge the trial court's reliance on that rule as the basis for its ruling.

Snow also appears to argue that even if rule 412 applied, her statements to the investigator would still be admissible because the statements fall under one of the exceptions to the rule that permits evidence of a victim's past sexual behavior if that

20

evidence "relates to the victim's motive or bias." *See* Tex. R. Evid. 412(b)(2)(C). But as with many of Snow's preceding arguments, she forfeited this argument because she changed her arguments on appeal from the one she made in the trial court.

Below, Snow argued that the statements were relevant because "we think it goes to show motive to not tell the truth." Here, she argues the statements were relevant because Complainant's past sexual behavior and orientation were relevant to whether Snow induced Complainant to engage in sexual conduct or a sexual performance. A party cannot use the appellate court as an audience to audition new-and-improved arguments why the trial court should have admitted evidence. *Lovill*, 319 S.W.3d at 691–92. Snow's argument in the trial court—that her statements to the investigator demonstrated Complainant's motive to lie—does not match her argument on appeal—that Complainant's sexual history and sexual orientation show a proclivity to engage in sexual conduct without inducement from Snow.

**B.  Complainant's alleged sexual history and sexual orientation were not relevant to establish that she might have engaged in a lewd exhibition without the inducement of Snow.**

Once again, even if Snow's arguments on appeal matched those she made below, the trial court would not have abused its discretion by excluding Snow's statements to the investigator. Those statements were not relevant to prove a proclivity to engage in sexual conduct without Snow's inducement.

Initially, the fact that the trial court made the right decision for the wrong reason does not prevent us from sustaining the decision. *See Qualls v. State*, 547

S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)) ("If the trial court's decision to admit or exclude evidence is correct under any applicable legal theory, we will uphold that decision even if the trial court gave a wrong or incomplete reason for its ruling."). We test the trial court's underlying decision and not its stated justification to determine whether it is "correct under any applicable legal theory." *Id.*

The core of Snow's argument appears to be the fact that Complainant might be a lesbian or had engaged in sexual relations makes it more or less probable that she might also be an exhibitionist who volunteered to have her nude picture flashed around the world. In our view, no rule of evidence justifies such a leap.

All evidence must meet rule 401's standard of relevance that the evidence "has any tendency to make a fact more or less probable than it would be without the evidence." Tex. R. Evid. 401. Even in those cases falling under one of rule 412's exceptions that permit the introduction of a victim's prior sexual history, there must be a link between that history and the fact that the defendant wants to prove, such as the victim's motive or bias. Tex. R. Evid. 412(b)(2)(C); *see Seery v. State*, No. 12-11-00095-CR, 2013 WL 683327, at *6 (Tex. App.—Tyler Feb. 21, 2013, pet. ref'd) (mem. op., not designated for publication) ("But K.B.'s prior sexual history does not tend to establish that K.B. fabricated the story because she was having sexual intercourse with others."); *Franklin v. State*, No. 12-08-00391-CR, 2010 WL 337334, at *5 (Tex. App.—Tyler Jan. 29, 2010, no pet.) (mem. op., not designated for publication) (holding that

22

there was no error in excluding sexual nature of victim's relationship with boyfriend to establish motive to fabricate when there was evidence that victim and defendant frequently quarreled about her boyfriend who was ten years older than victim and lived in the apartment rent-free); *Chavira v. State*, No. 12-03-00108-CR, 2004 WL 1418390, at *3 (Tex. App.—Tyler June 23, 2004, no pet.) (mem. op., not designated for publication) (concluding that "past sexual conduct does no more than show [that the victim] was sexually active" under circumstances in case); *Stephens v. State*, 978 S.W.2d 728, 734–35 (Tex. App.—Austin 1998, pet. ref'd) (holding that appellant failed to demonstrate "definite and logical link" between complainant's sexual behavior and alleged motive); *Cooper v. State*, 959 S.W.2d 682, 684–85 (Tex. App.—Austin 1997, pet. ref'd) (holding that evidence of complainant's sexual relations with boyfriend to prove she had fabricated accusation against defendant to conceal her relationship with boyfriend was not sufficiently connected to her motive to fabricate).

Here, the only explanation that Snow offers of a link between Complainant's alleged lesbianism or prior sexual history and a proclivity to engage in a lewd exhibition is the conclusion that "this evidence could tend to show that the behavior could have been self-induced, making it less likely that Appellant played a role." We do not see that link. Thus, even if Snow had offered the trial court the grounds that she offers us to admit the statements she made to the investigator, the trial court would have not abused its discretion by excluding the evidence.

We overrule Snow's fourth issue.

**VII. The trial court did not abuse its discretion by excluding the testimony of a clinical psychologist that Snow had a low IQ and suffered from a personality disorder.**

In her fifth issue, Snow argues that the trial court abused its discretion when it refused to allow evidence of her mental capacity. The trial court excluded the testimony of a clinical psychologist who testified on voir dire that Snow had an IQ of 77 and exhibited a dependent personality disorder. Snow contends that the psychologist's opinions were reliable. She then argues that the testimony was relevant because it "could lead one to conclude" that Snow lacked the ability to form the mens rea that was an element of the offense of sexual performance of a child. But Snow never tells us how the psychologist's testimony could have led to this conclusion when he never offered an opinion that Snow lacked the ability to form the necessary mens rea and testified that she knew what she had done was wrong.

**A. Standard of review**

The decision to exclude evidence of a mental illness is tested by an abuse-of-discretion standard. *Jackson v. State*, 160 S.W.3d 568, 575 (Tex. Crim. App. 2005).

**B. The psychologist's testimony**

During the guilt-innocence phase of her trial, Snow proffered the testimony of a clinical psychologist who testified on voir dire about his qualifications, the documents that he had reviewed, and the testing that he had performed on Snow. The psychologist further testified that Snow has an IQ of 77 and exhibits traits of dependent personality disorder. That disorder causes a person to be "dependent on

24

other people, rely[] on other people and basically look[] to others for nurture and some support and guidance and so on." The psychologist also described what it means for a person to have low IQ and expanded on the traits of dependent personality disorder. But he never offered an opinion on whether Snow suffered from a mental illness that rendered her incapable of forming the mens rea that is an element of the offense of sexual performance of a child.

Rather than undermining Snow's ability to form the mens rea, the psychologist admitted on cross-examination that Snow knew what she had done, that it was wrong, and that she had the capacity to act knowingly and intentionally:

> Q. And she understood what she had done, and she actually explains that in your interview with her; is that right?
>
> A. That's correct.
>
> Q. And she understands that what she did was wrong. And she states, I believe, and I'm going according to your report, that this was a one-time experience, and it was not repeated; is that correct?
>
> A. That's what I was told.
>
> Q. Okay.
>
> A. Yes.
>
> Q. And you were told that by the defendant?
>
> A. Yes, by the defendant.
>
> Q. All right. And so she does have the capacity to intentionally and knowingly perform the acts and comply with directions given by those?
>
> A. Yes.

25

The trial court did not permit the psychologist to testify before the jury.

**C.  The psychologist's testimony did not directly rebut Snow's mens rea; the trial court acted within its discretion to exclude that testimony.**

The Texas Penal Code states that a person commits the offense of sexual performance of a child "if, knowing the character and content thereof, he employs, authorizes, or induces a child younger than 18 years of age to engage in sexual conduct or a sexual performance."  Tex. Penal Code Ann. § 43.25(b).  Snow argues that this definition requires the mens rea that the defendant know that the conduct induced in the child is sexual in nature.  *See Dornbusch v. State*, 156 S.W.3d 859, 869 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd) ("The phrase [knowing the character and content thereof] precludes criminal culpability from arising unless the actor knows that the conduct induced is sexual in nature.").  We agree.

We also agree that expert testimony may be admitted on the issue of whether the defendant suffered from a mental illness that rebuts the mens rea element of an offense.  *See Mays v. State*, 318 S.W.3d 368, 382 (Tex. Crim. App. 2010).  Specifically, "'[a]s with the other elements of the offense, relevant evidence may be presented which the jury may consider to negate the mens rea element[,] . . . includ[ing] evidence of a defendant's history of mental illness,' provided that the evidence is admissible under the Texas Rules of Evidence."  *Henry v. State*, 466 S.W.3d 294, 298–99 (Tex. App.—Texarkana 2015) (quoting *Jackson*, 160 S.W.3d at 574), *aff'd*, 509 S.W.3d 915

(Tex. Crim. App. 2016). The expert testimony must, however, "directly rebut a defendant's culpable mens rea, [or] a trial court is not required to admit it." *Id.* at 299.

We disagree with Snow that the opinions of the psychologist she offered directly rebutted the mens rea element of the offense of sexual performance of a child. The psychologist never offered an opinion that Snow's reduced IQ or her diagnosis of dependent personality disorder undermined her ability to formulate the intent required to meet the mens rea element. To the contrary, on cross-examination, the psychologist opined that Snow understood what she had done, knew it was wrong, and was capable of acting intentionally and knowingly. The trial court therefore acted well within its discretion by excluding the testimony of the psychologist.

We overrule Snow's fifth issue.

**VIII. Snow forfeited her objection that the trial court erred by overruling her motion to suppress a search of her cell phone based on her claim that the affidavit used to obtain a warrant omitted a material fact. Further, the omission of the fact that Snow highlights did not vitiate a finding that probable cause existed to issue the warrant.**

Snow contends in her sixth and seventh issues that the trial court abused its discretion by overruling her motion to suppress. In essence, she claims a fact omitted from the affidavit supporting the issuance of the warrant to search her cell phone vitiated a finding of probable cause. First, Snow forfeited error on two of the arguments she makes on appeal. The effect of that forfeiture renders the argument she preserved an exercise in futility. No matter our resolution of her preserved claim,

27

the portions of the affidavit on which she forfeited her objection independently support a finding of probable cause. Second, the record Snow made at the hearing on the motion to suppress failed to carry her burden to establish that the officer preparing the affidavit omitted the fact knowingly, intentionally, or with reckless disregard for the truth and that consideration of the omitted fact undermined the magistrate's finding that probable cause existed to search the cell phone.

## A.  Snow has failed to preserve error.

In her motion to suppress, Snow challenged a single paragraph of the search-warrant affidavit. On appeal, she expands that challenge, now arguing that not only is the paragraph that was the target of the motion to suppress defective but also that the remaining paragraphs of the affidavit could not support the issuance of the warrant. But she does not attack those remaining paragraphs claiming their statements did not support the issuance of the warrant. Instead, she claims only that those statements had unreliable sources, but she did not make that objection in the trial court. Thus, she forfeited her reliability objections. With her reliability challenge to the remaining paragraphs forfeited and no suggestion that those paragraphs, if reliable, were not sufficient to support the issuance of the affidavit, Snow's preserved challenge becomes an exercise in futility. No matter the resolution of the preserved challenge, the remaining—now unchallenged—paragraphs support the issuance of the warrant.

Specifically, Snow's motion to suppress attacks only paragraph six of the affidavit (though it does not identify the paragraph by number). Her attacks on

appeal broaden to include paragraphs three and four of the affidavit. The new challenges focus only on the reliability of those paragraphs. Snow forfeited her reliability challenges because she did not make them in the trial court. *See Glenn v. State*, No. 09-16-00093-CR, 2017 WL 4274674, at *3 (Tex. App.—Beaumont Sept. 27, 2017, no pet.) (mem. op., not designated for publication) ("Glenn waived his right to challenge the reliability of the confidential source because he presented his argument on that ground for the first time in his appeal."); *Richardson v. State*, No. 01-04-00833-CR, 2006 WL 488661, at *3 (Tex. App.—Houston [1st Dist.] Mar. 2, 2006, pet. ref'd) (mem. op., not designated for publication) ("Appellant neither objected to the trial court nor asserted any complaints concerning the untimely execution of the search warrant and the reliability of the canine unit and has thus waived those complaints on appeal.").

The forfeited complaint leaves Snow in the posture that even if we concluded her preserved issue were valid, we cannot agree that the remaining portions of the affidavit did not support a finding of probable cause and the issuance of the warrant. *See Islas v. State*, No. 14-17-00660-CR, 2018 WL 5261103, at *2 (Tex. App.—Houston [14th Dist.] Oct. 23, 2018, pet. filed) ("If the defendant carries that burden [in the hearing on the motion to suppress], then *the false statement is removed from the affidavit*, or the true statement is added, and the reviewing court must determine whether probable cause for the warrant still exists." (emphasis added)).

29

**B. The trial court did not err by denying Snow's motion to suppress.**

**1. Background of Snow's motion to suppress the warrant**

Snow argues that paragraph six of the affidavit recited that "[d]uring the [forensic] interview, the victim said that the suspect told her to take off her clothes, so she could take a picture of her." The motion to suppress argues that the affidavit omitted the fact that Complainant also told the forensic interviewer that she did not remove her bra and panties and was not naked when Snow took a photograph of her. Even if the validity of the issuance of the warrant depended on the survival of paragraph six (which we have explained above that it does not), the trial court acted within its discretion to deny the motion. The affidavit accurately represented what Complainant told the forensic interviewer, and the omission of the information highlighted by Snow was not necessary to the finding of probable cause to support the issuance of a warrant.

The affidavit accurately described Complainant's statement to the forensic interviewer. She told the forensic interviewer that her former aunt—Snow—took pictures of her naked without her permission. But Complainant later stated that Snow had said, "Take my clothes off so that she can take a picture of me." Then, Complainant said that her bra was on when Snow took her photos. The detective who prepared the affidavit apparently watched the forensic interview while it was in progress. However, that detective did not testify during the hearing on the motion to

suppress. Instead, the parties stipulated that the detective was present during the forensic interview.

As set forth above, the affidavit that supported the issuance of the search warrant recited in paragraph six that "[d]uring the interview, the victim said that the suspect told her to take off her clothes, so she could take a photo of her." The affidavit recited in paragraph three that Complainant's uncle had searched Snow's cell phone and then had shown photos found on the phone to Complainant's grandmother. The grandmother looked at photos of Complainant and Snow and described them as pornographic. Next, in paragraph four, the affidavit states that Complainant's mother and her grandmother spoke to Complainant. Paragraph four also states that "[t]he victim said that the suspect had her undress, and the suspect took nude photos of her."

## 2. Standard of review

The Fourteenth Court of Appeals recently set out the standard of review to follow when testing a magistrate's decision to issue a warrant:

> When reviewing a trial court's ruling on a motion to suppress, we generally apply a bifurcated standard of review, giving almost total deference to the trial court's determinations of fact and reviewing de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, where the motion to suppress is based upon a magistrate's decision to issue a warrant, there are no credibility determinations to which we must defer because the trial court is constrained to the four corners of the affidavit. *Id.*
>
> When we review the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional

preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *Id.*; *see Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). "As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold that magistrate's probable[-]cause determination." *McLain*, 337 S.W.3d at 271; *see State v. Dugas*, 296 S.W.3d 112, 115 (Tex. App.— Houston [14th Dist.] 2009, pet. ref'd) (explaining that review of magistrate's issuance of search warrant is "not de novo" and that "great deference is given to the magistrate's determination of probable cause"). Under this highly deferential review—which the Texas Court of Criminal Appeals calls the "substantial basis" standard—the reviewing court's duty is simply to ensure the magistrate had a substantial basis for concluding that probable cause existed. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (citing W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009–2010)).

*Islas*, 2018 WL 5261103, at *2.

Both the United States and Texas Constitutions specify that no warrant shall issue without a showing of probable cause found in an affidavit or oath. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9. The Texas Code of Criminal Procedure states the same requirement. *See* Tex. Code Crim. Proc. Ann. art. 18.01(b). "Probable cause exists if, under the totality of the circumstances set forth in the affidavit before the magistrate, there is a 'fair probability' that contraband or evidence of a crime will be found in a particular place at the time the warrant is issued." *State v. Jordan*, 342 S.W.3d 565, 568–69 (Tex. Crim. App. 2011) (footnote omitted).

Here, Snow attacks the affidavit by claiming that it omitted a fact— Complainant's statement that she was photographed in her underwear. This court has described how to make the determination of whether the omission of a fact from a

32

warrant vitiates a warrant and the standard to apply in making that determination as

follows:

> The United States Supreme Court has held that an affirmative misrepresentation of a material fact that establishes probable cause, made knowingly or recklessly in a probable cause affidavit, will render a search warrant invalid under the Fourth Amendment. *See Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676, 57 L.Ed.2d 667 (1978). Although the Texas Court of Criminal Appeals has never directly decided whether a *Franks* analysis applies to omissions, this court, other Texas courts of appeals, and the Fifth Circuit have held that, when a defendant seeks to suppress evidence lawfully obtained by a warrant based on an alleged omission in the affidavit supporting the warrant, he must establish by a preponderance of the evidence that the omission was made knowingly, intentionally, or with reckless disregard for the truth in an attempt to mislead the magistrate. *See Darby v. State*, 145 S.W.3d 714, 722 (Tex. App.—Fort Worth 2004, pet. ref'd); *McKissick [v. State]*, 209 S.W.3d [205,] 211–14 [(Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)]; *Heitman v. State*, 789 S.W.2d 607, 610 (Tex. App.—Dallas 1990, pet. ref'd); *Melton v. State*, 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.); *see also United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980). Accordingly, if a defendant establishes by a preponderance of the evidence that omissions of fact were made in a probable[-]cause affidavit and that such omissions were made knowingly, intentionally, or with reckless disregard for the truth, the warrant will be held invalid if the inclusion of the omitted facts would vitiate probable cause. *Martin*, 615 F.2d at 328.

*Martin v. State*, No. 02-08-00128-CR, 2009 WL 2414294, at *4 (Tex. App.—Fort

Worth Aug. 6, 2009, no pet.) (mem. op., not designated for publication); *see also Islas*,

2018 WL 5261103, at *4.

**3. Snow failed to carry her burden at the hearing on the motion to suppress in two ways.**

Snow failed to carry her burden to establish both (1) that by a preponderance

of the evidence an omission was made knowingly, intentionally, or recklessly in an

attempt to mislead the magistrate and (2) that including the omitted fact would have vitiated a finding of probable cause.

The first failure results from the fact that the only evidence before the trial court was the affidavit, the forensic interview, and the stipulation that the detective was present during the interview. Thus, the record establishes that the forensic interview contains a statement not reflected in the affidavit but does not contain any explanation why the statement did not appear. As the record stands, the trial court knew only that a statement made during the interview was not included in the affidavit. Many innocent explanations exist why the statement did not appear—the detective did not hear the statement, or he did not think that it was material in view of the other statements made by Complainant. It was within the trial court's discretion to conclude that Snow failed to carry her burden of establishing by a preponderance of the evidence that an omission was made knowingly, intentionally, or with reckless disregard for the truth. *See Martin*, 2009 WL 2414294, at *4 (holding that record did not reflect that officer intentionally or knowingly, with reckless disregard for the truth, made any omissions in affidavit that would affect probable cause to support issuance of search warrant); *see also Islas*, 2018 WL 5261103, at *4 (same).

Snow's contention also fails because, even if the true statement were included, this does not vitiate a finding of probable cause. As noted above, Snow forfeited any challenge to the reliability of the remaining paragraphs of the affidavit. Those paragraphs establish that Complainant's grandmother saw what she described as

34

pornographic pictures of Complainant on Snow's cell phone and that Complainant stated to her mother and her grandmother that Snow had "[taken] nude pictures of her." Certainly, Complainant did state in the interview that she was photographed in her bra and panties. But that statement did not destroy the effect of the other statements in the affidavit that both a pornographic photo was found on the cell phone and that Complainant told her two closest relatives that she had been photographed nude. We hold that the trial court acted within its discretion to overrule Snow's motion to suppress.

We overrule Snow's sixth and seventh issues.

## IX. The trial court did not abuse its discretion by failing to suppress the search of the cell phone because the phone was "stolen" and then given to the police.

In her eighth issue, Snow argues that other members of the household stole her cell phone. The alleged theft of the cell phone, in Snow's view, demonstrates that the phone was obtained in violation of the laws of the State of Texas and that the failure to suppress a search of the phone violated the exclusionary rule found in article 38.23(a) of the Texas Code of Criminal Procedure. Snow forfeited this argument by failing to make the argument she makes on appeal in the trial court. Even if we were to reach the merits of her claim, the alleged theft of the cell phone did not warrant a suppression of its search.

35

**A. Why Snow forfeited her complaint by not raising it in the trial court**

We have held that a motion to suppress functions as a specialized objection to admissibility, and as with any other objection, "must meet the ordinary procedural requirements of an objection, in that it must be timely and sufficiently specific." *Torres v. State*, No. 02-16-00322-CR, 2017 WL 3184494, at *2 (Tex. App.—Fort Worth July 27, 2017, pet. ref'd) (mem. op., not designated for publication).

Here, both Snow's motion to suppress and her argument at the hearing on the motion to suppress raised only the issue that we addressed above—the warrant authorizing a search of the cell phone was invalid because the affidavit supporting the issuance of the warrant omitted a fact. Snow cites us to no other objection raising a violation of article 38.23. Indeed, we have searched the record and have found no reference to that statute in the trial court. Because the complaint that Snow makes on appeal in her eighth issue differs from that made at trial, she forfeited her claim of error.

**B. Even if Snow had not forfeited the complaint, the trial court would not have abused its discretion by overruling an objection predicated on article 38.23.**

As set forth above, the trial court has discretion to resolve an objection seeking to suppress evidence, and the trial court's determinations receive almost total deference on appeal with regard to rulings involving historical facts and the application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. Two rationales would have supported an exercise of discretion and

36

permitted the admission of the cell phone in the face of an objection relying on article 38.23.

First, Snow surrendered access to the cell phone to other members of her household, and by doing so, she faced the risk that others might give access to the phone to additional people, including the police, or that her permission to use the phone gave others "assent" to access the phone. *See Mestas v. State*, No. 07-12-00547-CR, 2014 WL 3868067, at *2 (Tex. App.—Amarillo Aug. 5, 2014, pet. ref'd) (mem. op., not designated for publication) ("A third party may consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched[] or if the third party shares common authority over the premises or property with the non[]consenting person's interest.") (citing *Hubert v. State*, 312 S.W.3d 554, 560–61 (Tex. Crim. App. 2010)); *Thomas v. State*, Nos. 14-16-00665-CR, 14-16-00666-CR, 2017 WL 4400116, at *5 (Tex. App.—Houston [14th Dist.] Oct. 3, 2017, pet. ref'd) (discussing when unauthorized access to data contained on a cell phone violates section 33.02 of the penal code that would warrant a violation of the law sufficient to prompt exclusion under article 38.23). Presumably, to use the cell phone, other members of the household knew the phone's password. Snow should not be able to complain that others accessed her cell phone when she permitted that access.

Second, the trial court could have relied on the Texas Court of Criminal Appeals's opinion in *Jenschke v. State* for its holding that the exclusionary rule of article

38.23 is not violated when one person takes another's property without the other's consent but does so with the intent to deliver the property to law enforcement. 147 S.W.3d 398, 402 (Tex. Crim. App. 2004); *see Kane v. State*, 458 S.W.3d 180, 186 (Tex. App.—San Antonio 2015, pet. ref'd) (holding that when person takes possession of property with the intent to turn it over to law enforcement, the conduct is not criminal and does not warrant exclusion under article 38.23); *Carlson v. State*, 355 S.W.3d 78, 80–81 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (same).

Here, the household member who accessed the cell phone gave it to Complainant's grandmother. Complainant's grandmother held the cell phone because she did not want it "messed with" and delivered it to the police the next day. This evidence, in combination with the cited authority, gave the trial court ample latitude to exercise its discretion to overrule any attempt to exclude the cell phone under article 38.32.

Thus, even if Snow had preserved her complaint that her cell phone was "stolen," she would not have prevailed in her contention that the trial court should have suppressed the admission of evidence obtained from the cell phone.

We overrule Snow's eighth issue.

38

## X. Conclusion

We have carefully considered the eight issues that Snow raises on appeal and have overruled each of them. We affirm the judgment of the trial court.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 17, 2019